FANNING, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, April 28, 1903.

STREET RAILWAYS: Contributory Negligence:. Concurrent Negligence. Where, in an action for injuries received by being struck at a street crossing by a motor car, the plaintiff testified that while she was yet fifteen or twenty feet from the track, she saw the car approaching 200 feet away, but, without paying further attention to the car, she walked on across and was struck, she was guilty of negligence, and, although the motorman was guilty of negligence in running the car at a prohibited rate of speed, the injury was the result of the concurrent negligence of both; a demurrer to the evidence should have been sustained.

Appeal from St. Charles County Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

REVERSED.

*Boyle, Priest & Lehmann, Geo. W. Easley, Theodore Bruere & Son* and *Crawley, Jamison & Collet* for appellant.

(1) The demurrer to the plaintiff's evidence should have been sustained. The plaintiff's attention was di-

rected to the car by the explosion of the bomb under it, while she was on the sidewalk. She then turned across the street and on to the track, paid no attention to the car after she left the sidewalk until she got to the middle of the track, and then looked and saw that the car was right on her. The duty to look was a continuing one, and not to look from the time she left the sidewalk until she reached the middle of the track was such negligence as bars her recovery. Kelsay v. Railroad, 129 Mo. 372; Holwerson v. Railroad, 157 Mo. 216; Watson v. Railroad, 133 Mo. 250; Boyd v. Railroad, 105 Mo. 371; Sinclair v. Railroad, 133 Mo. 241; Huggert v. Railroad, 134 Mo. 673; Vogg v. Railroad, 138 Mo. 172; Culbertson v. Railroad, 104 Mo. 35; Railroad v. Mosley, 57 Fed. 922; Kirtley v. Railroad, 65 Fed. 391; Murphy v. Railroad, 153 Mo. 262; Butts v. Railroad, 98 Mo. 272; Loring v. Railroad, 128 Mo. 349; Kries v. Railroad, 148 Mo. 321; Kotney v. Railroad, 151 Mo. 35; Lane v. Railroad, 132 Mo. 4; Schofield v. Railroad, 114 U. S. 615; Maxey v. Railroad, 113 Mo. 1; Payne v. Railroad, 136 Mo. 562. (2) It has ever been the rule in this State: ''That it is such negligence for one to cross or get upon a railway track at a public crossing, or elsewhere, without looking or listening for an approaching train, as precludes a recovery for an injury sustained by him from a passing train or locomotive, whether the company's negligence also contributed directly to produce the injury or not, and has so often been decided by this court that it must now be regarded as the settled law of this State.'' Kelly v. Railroad, 75 Mo. 140; Maher v. Railroad, 64 Mo. 267; Fletcher v. Railroad, 94 Mo. 484; Harlan v. Railroad, 65 Mo. 22; Harlan v. Railroad, 64 Mo. 480; Zimmerman v. Railroad, 71 Mo. 476; Moody v. Railroad, 68 Mo. 470; Bell v. Railroad, 72 Mo. 50; Purl v. Railroad, 72 Mo. 168; Adams v. Railroad, 74 Mo. 533. It has also been the rule of the Court of Appeals of this State. Hanselman v. Railroad, 88 Mo. App. 123; Killion v. Railroad, 86 Mo. App. 473; Skipton

v. Railroad, 82 Mo. App. 143; Molyneux v. Railroad, 81 Mo. App. 125; Lien v. Railroad, 79 Mo. App. 475; Jones v. Barnhart, 63 Mo. App. 501; Smith v. Railroad, 52 Mo. App. 36; Glenville v. Railroad, 51 Mo. App. 629.

*A. R. Taylor* for respondent.

(1) The precise law of this case is this: The plaintiff, before undertaking to cross the track in question, was bound, in the exercise of ordinary care, to look to see whether her passage over the track was made dangerous by an approaching car. If she saw the car approaching and did not know in the exercise of ordinary care that it in fact was running faster than permitted by the law, she had the right to assume that it was not running faster than the lawful speed. This is precisely what the Supreme Court held, in the following cases: Gratiot v. Railroad, 116 Mo. 454; Sullivan v. Railroad, 117 Mo. 222; Hutchinson v. Railroad, 161 Mo. 254; Weller v. Railroad, 164 Mo. 199. (2) To hold otherwise would be to invoke the dodger law, and require every citizen to make inquiry as to whether the railroad was violating the law, and to anticipate that it would violate the law, and to avoid the effect of such wrongful conduct on the part of the railroad, have a court declare him negligent for successfully evading the wrongdoer. This might be the rule if no person had a right to cross the street except at the peril of life and limb—or if the railroad company had the exclusive or paramount right to run its cars without restriction over the streets. But such is not the law. Oates v. Railroad, 168 Mo. 544; Henry v. Railroad, 113 Mo. 535; Winters v. Railroad, 99 Mo. 517. These cases hold that pedestrians and vehicles have equal rights on the street with the railroad company.

### STATEMENT.

On May 27, 1900, plaintiff was struck by one of

defendant's west-bound cars an Manchester avenue, in the city of St. Louis, and injured. The suit is to recover damages alleged to have been caused by the collision.

The petition contains the following assignments of negligence: That the car was running at a wild, excessive and unlawful rate of speed; that it was running in violation of what is commonly known as the vigilant-watch ordinance and also in violation of the speed ordinance, all of which acts of negligence are alleged to have contributed to plaintiff's injuries.

The answer was a general denial and a plea of contributory negligence to the effect that plaintiff stepped on the track immediately in front of defendant's car and so near thereto that it was impossible to stop the car in time to prevent it striking plaintiff.

On the part of plaintiff the evidence is that she kept a boarding-house on the north side of Manchester avenue a short distance west of where the accident occurred; that at about 2:30 p. m. on May 27, 1900, she, in company with her grown daughter and Mrs. Charles Herron, started to church; that they traveled a short distance east on the north side of Manchester avenue and then turned south to cross over the street in single file; that Mrs. Herron was in advance, the daughter next and the plaintiff in the rear; that Mrs. Herron crossed the street and had just stepped on the sidewalk, when plaintiff was struck; that plaintiff's daughter was six or seven feet south of the track and plaintiff had just stepped over the south rail of the track, but not far enough from it to miss the car.

Plaintiff testified that the fender or some part of the car struck her on the lower and back part of her legs and threw her into the street; that both bones of the right leg below the knee were broken, the cap of the left knee displaced, the condyles of the tibia of the left leg fractured, her back badly bruised and that from these injuries she was confined to her bed and was under medical treatment for eight or nine months; that her

left knee was permanently injured and so weak that she was unable to bear her weight upon it and was compelled to go upon crutches. In respect to her injuries, she was corroborated by her daughter, who waited on her, and by her attending physician. The latter testified that the injury to her left knee was incurable, and she would be compelled to go on crutches the balance of her life; that she also had an incurable kidney trouble probably caused by the injury to her back when she was struck by the car.

Plaintiff testified that prior to the accident she was making from fifty to sixty dollars a month keeping boarders; that after she was injured she had to give up the business for the reason that she was unable to look after it; that for medicine and medical attendance she had been put to an expense of from two hundred and fifty to two hundred and seventy-five dollars.

The evidence is that at the time of the accident the employees of the defendant were on a strike; that they had an assembly hall on Manchester avenue near the place of the accident, and that a number of the strikers was boarding with the plaintiff and a number of them was around in the neighborhood when the accident happened; that a torpedo had been put on the track about two hundred feet east of where plaintiff was struck by the car and when the car passed over this torpedo it exploded and made a loud noise, which noise caused plaintiff to look up; that she saw the car coming about two hundred feet east of her when she looked up, but did not notice that it was running at an unusual rate of speed and could not tell at what speed it was running (she supposed it was running at the usual rate of speed, seven or eight miles per hour); that when she looked up she was from fifteen to twenty feet west of the crossing; that she did not stop but walked on towards the crossing, turned south immediately in the rear of her daughter and proceeded to cross the street; that when she reached the middle of the track she looked east and

saw a car coming, in thirty or forty feet of her, running rapidly, and that she then hurried to get off the track, but was struck before she could clear the car.

She testified that she thought she had plenty of time to cross before the car would arrive and did not look at the car again after the explosion occurred until she was on the track; that if she had continued to look at it she supposed she might have seen that it was running at a rapid speed.

Other witnesses, in behalf of plaintiff, testified that the car was about two hundred feet east of the crossing where plaintiff was injured when the torpedo exploded; that the car was running on a down grade with the power turned on, which was unusual, and was running at a speed of from fifteen to twenty-five miles an hour; that when the torpedo exploded, the motorman in charge became frightened, lost control of the car and let it run wild, and another motorman, who was inside of the car, came out and took charge of it, but was unable to stop it until it had run from one hundred and twenty to one hundred and fifty feet beyond where plaintiff was struck.

The vigilant-watch ordinance and speed ordinance were read in evidence by plaintiff.

On the part of defendant the evidence tends prove that plaintiff was but slightly injured; that no bones in her left leg were broken; that her right knee was not injured and she was apparently in good health and there was no apparent reason why she should use crutches; that the car, at the time, was under the control of the motorman, was running at a speed of from six to seven miles per hour, and that plaintiff, when she turned south to cross the track, stopped near the track and looked and saw the car coming within thirty or forty feet of her and then deliberately proceeded to walk over the track; that the motorman and a special police officer on the car saw her movements and called to her to look out; that she paid no attention but con-

tinued on the track and was in such close proximity to the car that it was impossible to stop it in time to prevent it striking her; that the car was stopped within forty-five feet after it struck her.

The evidence of defendant was that the crossing where plaintiff was injured was about one hundred and twenty-five feet west of the point on the track where the torpedo was exploded; that a car running from six to eight miles per hour could be stopped on that track, in the condition it was in on that day, in about seventy feet; if running at a speed of fifteen or twenty miles per hour, it could be stopped on about eighty or ninety feet.

In rebuttal the evidence is that no warning was given by the motorman or other person to plaintiff to look out.

A verdict assessing plaintiff's damages at $4,000 was signed by ten of the jurors and returned into court.

After an unavailing motion for new trial, defendant appealed.

BLAND, P. J. (after stating the facts as above). —1. Defendant, as is usual in this class of cases, offered peremptory instructions at the close of plaintiff's evidence and again at the close of all the evidence, that under the evidence plaintiff could not recover, which instructions the court refused.

Plaintiff testified that her attention was called to the car by the explosion of the torpedo; that she was then fifteen or twenty feet from the crossing, and the car was two hundred feet east of her; that without paying any further attention to the car she walked on the crossing, turned south and proceeded to go across the track and did not notice the car until she was in the middle of the track, when the car was close upon her running at a rapid speed. It seems to us that, having seen the car two hundred feet away, ordinary prudence would have dictated to plaintiff, before proceeding across the

track, to look and ascertain whether or not she had time to cross in safety, and that by her own evidence she convicts herself of negligence. Kelsay v. Railway, 129 Mo. l. c. 372; Holwerson v. Railway, 157 Mo. 216, and cases cited. Conceding, then, that defendant's motorman was guilty of negligence, in running the car at a prohibited rate of speed, the fact remains that plaintiff was likewise guilty of negligence, concurrent with the negligence of the motorman, and that the injury was the result of the concurrent negligence of both. In such circumstances the law is well settled, here and elsewhere that plaintiff is not entitled to recover. Turner v. Railroad, 74 Mo. 602; Powell v. Railroad, 76 Mo. 80; Butts v. Railway, 98 Mo. 272; Boyd v. Railway, 105 Mo. 371; Kreis v. Railway, 148 Mo. 321; Murphy v. Railway, 153 Mo. l. c. 262; Smith v. Railway Co., 52 Mo. App. 36; Jones v. Barnard, 63 Mo. App. 501; Lien v. Railway Co., 79 Mo. App. 475; Skipton v. Railway, 82 Mo. App. l. c. 143; Killian v. Railway, 86 Mo. App. 473; Gahagan v. Railroad, 55 L. R. A. (N. H.) 426, and note.

We conclude that defendant's instruction in the nature of a demurrer to plaintiff's evidence should have been given, and reverse the judgment. *Reyburn* and *Goode, JJ.*, concur.