JAMES W. GORDON, by next friend, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, January 30, 1911.

1. **APPELLATE PRACTICE: Demurrer to Evidence: Contributory Negligence.** Where, at the close of plaintiff's evidence, and at the close of all the evidence, defendant asked the court to direct a verdict in its favor, but these requests were refused, and the cause was submitted to the jury on the sole issues of whether the peril of the deceased was caused by the negligent manner in which the car was operated, or was caused wholly or in part by the negligence of the deceased, defendant is not bound by the submission in its instructions of contributory negligence as an *issue of fact*, but, if defendant preserves its exceptions, it may return in the appellate court to its demurrer to the evidence, and present the question whether the excessive speed at which the car was negligently operated was the sole cause of the injury, and deceased was not guilty *in law* of contributory negligence.

2. ———: **Instructions: Humanitarian Doctrine.** Where plaintiff asked no instructions, and did not object to those given at the request of the defendant, among which was an instruction that there was no evidence in the case that defendant's motorman running and operating the car which struck deceased, could have stopped or checked the speed of the car, after deceased placed himself in a position of peril, in time to have avoided the injury. *Held,* that plaintiff, in effect, approved the instruction as given, and thereby admitted that the evidence most favorable to plaintiff would not sustain the charge of negligence under the humanitarian doctrine, and that on appeal plaintiff cannot renounce that position.

3. CARRIERS OF PASSENGERS: Contributory Negligence.
Where the street car which inflicted injuries from which
plaintiff's father died, must have been from 900 to 1000 feet
away when deceased first saw the car, and at that time was
running at a speed of from thirty-five to forty miles per hour,
and was not coming head on, but at an angle, and de-
ceased took a second look when he was in a place of safety,
which look, if taken, would have told an ordinarily careful
man in his situation that the car was not then to exceed
seventy-five feet away; that it had traveled a distance fifteen
times greater than he had traveled in coming from the side-
walk; that it was not checking speed, and that a collision
would be unavoidable, if he attempted to cross in front of the
car. *Held*, that the conduct of the deceased was negligence in
law that precludes a recovery.

4. ————: ————: Excessive Speed of Car. The duty of deceased,
to pay close attention to his way over the tracks, was a con-
tinuing duty, and he was not excused from the performance
of that duty by the presumption that he was entitled to in-
dulge that the car would not be run faster than twenty miles
an hour (the speed provided in the city ordinance) and at that
speed was too far away to menace him.

5. APPELLATE PRACTICE: Cause Remanded: Humanitarian
Doctrine. Although the issue of negligence under the humani-
tarian doctrine was abandoned by plaintiff in the trial of the
case, where, in the opinion of the appellate court, the evidence
was such that the trial court would have been justified in sub-
mitting that issue, had it not been abandoned, it is but just to
remand the cause, and give plaintiff an opportunity to have his
case tried on the only tenable ground.

6. CARRIERS OF PASSENGERS: Humanitarian Doctrine: Ex-
cessive Speed. Where a motorman is approaching a crossing
at highly excessive speed, with the purpose of running by a
regular stopping place, where people are waiting for his car,
he has no right to indulge in the presumption that a pedes-
trian, who was one of a straggling group of persons slowly
crossing the street, would stop in a place of safety, but the
motorman should have apprehended that deceased might
be surprised and imperiled by his recklessness. Hence, if the
same evidence be adduced at a subsequent trial, the issue of
"last chance" negligence should be sent to the jury.

Appeal from Jackson Circuit Court.—*Hon. W. O.
Thomas,* Judge.

REVERSED AND REMANDED.

*John H. Lucas* for appellant.

(1) The court erred in submitting the cause to the jury. The deceased was guilty of contributory negligence, such as to preclude a recovery herein. Degonia v. Railroad, 224 Mo. 587; Boring v. Railroad, 194 Mo. 548; Stotler v. Railroad, 204 Mo. 628; Green v. Railroad, 192 Mo. 137; Rodan v. Transit Co., 207 Mo. 411; Laun v. Railroad, 216 Mo. 599; Holland v. Railroad, 210 Mo. 351; Schmidt v. Railroad, 191 Mo. 228; Cole v. Railroad, 121 Mo. App. 609; Zalotuchin v. Railroad, 127 Mo. App. 584; Grout v. Railroad, 125 Mo. App. 559; McCreery v. Railroad, 221 Mo. 32; Gamm v. Railroad, 141 Mo. App. 313; Dey v. Railroad, 140 Mo. App. 469. (2) Error in refusing to give instruction No. 7. The deceased saw the car approaching and was chargeable with the consequences of such knowledge. Gumm v. Railroad, 141 Mo. App. 314; Cole v. Railway, 121 Mo. App. 610; Laun v. Railroad, 216 Mo. 580.

*Boyle & Howell* for respondent.

(1) Where an ordinance regulates the rate of speed of street cars through the streets of a city, and the street railway company wantonly, knowingly and recklessly violates such ordinance, and operates a car at a dangerous and deadly rate of speed, a pedestrian attempting to cross a street along which said car is operated and in the exercise of ordinary care for his own safety, may presume that persons in control of such car are obeying the ordinance. Hutchinson v. Railroad, 161 Mo. 246; Eswin v. Railroad, 96 Mo. 290; Kellny v. Railroad, 101 Mo. 77; Jennings v. Railroad, 112 Mo. 268; Gratoit v. Railroad, 116 Mo. 540 Sullivan v. Railroad, 117 Mo. 214; Riska v. Railroad, 180 Mo. 168; Weller v. Railroad, 164 Mo. 199; Johnson v. Railroad, 203 Mo. 402. (2) Even if the court should find that defendant had negligently placed himself in a position

of peril, the humanitarian doctrine applies to the facts in this case and plaintiff is entitled to recover by reason thereof.    Cole v. Railroad, 121 Mo. App. 605; Grout v. Railroad, 125 Mo. App. 552; Dahmer v. Railroad, 136 Mo. App. 443; and cases cited in Point 1.

JOHNSON, J.—Plaintiff, the minor son of James Gordon, deceased, sued to recover damages for the death of his father which he alleges was caused by the negligence of defendant. At the time of his death Gordon was a widower and plaintiff was his only minor child. The cause is here on the appeal of defendant from a judgment of two thousand dollars recovered by plaintiff in the trial court.

Gordon was killed near the intersection of Twenty-fourth street and Grand avenue in Kansas City, shortly after eight o'clock in the evening of September 22, 1908, as he was crossing Grand avenue, a busy public thoroughfare. A north-bound electric car on defendant's "Westport line" struck him and inflicted injuries from which he died. Grand avenue runs north and south, the numbered streets east and west. Twenty-fifth street is 761 feet south of Twenty-fourth street and between them, at a point 418 feet south of Twenty-fourth street, the course of Grand avenue deflects to the southwest and continues on a tangent in a southwardly direction. The street car tracks, two in number, make a curve at this point to conform with the course of the street.

Gordon and plaintiff lived in the basement of a building on the west side of Grand avenue, a short distance north of Twenty-fourth street. His daughter, her husband and her mother-in-law had been paying him a visit and had left his home accompanied by him for the purpose of boarding a north-bound street car. The party proceeded to cross Grand avenue to the northeast corner of that street and Twenty-fourth street which was a regular stopping place for cars running north. The

women walked some distance ahead, crossed the car
tracks, stopped at the usual stopping place for passen-
gers and signalled the approaching car to stop. Witness-
es for plaintiff say the car which ran on the east track
came on at from thirty-five to forty miles per hour and
ran by Twenty-fourth street without slackening speed
and without ringing the bell. Gordon and his son-in-
law walked a few paces behind the women. They left the
curb on the west side of the street at a point about 100
feet north of Twenty-fourth street and proceeded in a
diagonal course towards the stopping place for passen-
gers described. Their direction was southeast and they
traveled sixty feet in going from the curb to the track
on which the car was running. The son-in-law testi-
fied that they walked slowly, perhaps at the rate of two
or two and one-half miles per hour, and that just as
they started to cross the street they looked south and
saw the car more than a block away—from 700 to 1000
feet from the place of the collision and that it was "just
coming around the curve." As they stepped from the
sidewalk one of the women called back to them, "Here
comes the car now." The car had an electric headlight
and electric lights inside. The witness states they
did not and could not observe the speed of the car but
that when they reached the west track—were just step-
ping on that track—they looked again and saw the car.
He would not state how far away it was then but said,
"it was quite a little ways up the track yet." They
kept on as before, the witness half a step in front of
Gordon. As the witness reached the middle of the east
track, he realized the car was rushing on them. He
hallooed and jumped back far enough for the car to
clear him as it rushed by. Gordon, heeding the cry,
also jumped back but not far enough. The end of the
bumper or the projecting handrail struck him and hurled
him to the pavement.

An ordinance of the city pleaded and introduced in
evidence prohibited street cars from running at a great-

er speed than twenty miles per hour and the petition charges that defendant's negligence in running the car at excessive speed and in violation of the ordinance was the proximate cause of his father's death. The petition further alleges that Gordon "was in a position of peril and danger of which the defendant well knew, or by the exercise of ordinary care might have known in time to have stopped said car and avoided striking said deceased."

The answer is a general traverse and a plea of contributory negligence. The motorman of the car testified:

"On the evening of the 22d day of September, 1908, I was in the employ of the Metropolitan Street Railway Company as a motorman and was running and operating a Westport car. When I got to Hunter avenue and Main street I got off the car and went in a drug store to telephone to the car barn, and when I got there there was a young lady using the phone and I was delayed about five minutes. By this time there were some other cars close behind me. I went from Hunter avenue into Main street, and started north on Main street. I made the stop at Thirty-first street. After that I made no stop until I passed Twenty-fourth street. It was just about or a little after eight o'clock at night. The car was full of people who seemed to be like theatre people going to a theatre. The reason I made no stop was because no one wanted to get off, and the other cars were following so close behind. My car was running pretty fast and was coming down grade. I did not intend to stop my car to take up any passengers because I was behind time, and the other cars were following close behind me. After leaving Twenty-seventh street I was ringing my alarm bell with my foot to warn people of the approach of the car, and show people the car was not going to stop. I was running this way and looking directly in front of me, as I came around the curve at or near Twenty-fifth street; as I came around the

curve north of Twenty-fifth street. At this point on Grand avenue the track is straight and runs due north from that point. The street was well lighted; just as I turned the curve north of Twenty-fifth street I saw the man who was struck with some other gentleman with him, I also saw at the same time some people standing on the corner on the north side of Twenty-fourth street and on the east side of Grand avenue. They crossed over the north-bound track just as I turned the curve. At that time the two men were some feet west of the track. These people on the east side of the street saw that my car was not going to stop and someone held up his hand or something as if to get me to stop, but I did not intend to make the stop and kept my foot on the alarm bell to notify them of that fact and rang it more violently and oftener than before. When I first saw these two men I was ringing this bell, they looked toward my car as if to stop, and I thought from their movements they were going to stop, I kept ringing my bell and made no effort to stop the car until I was in about a car length of these men when I reversed my power and turned on the air and applied the sand. It was too late, however, the young man jumped back and was not struck, the old man was hit by the hand-hold on the front end of the car and knocked down. The handhold of the car was badly bent by the blow. My car ran fully nearly to Twenty-third street before I could stop it. After I saw this man was not going to stop I did everything I could to stop the car. I was sounding this bell all the time I was coming down from Twenty-fifth street and was in plain view of these two men. I saw them plainly and they saw me. They looked that way and I thought they heard the gong I was ringing, when these people on the corner held up their hands for me to stop I rang the gong more violently than before. The fender did not hit the old man at all, but it was the handhold on the side of the car.

153 App—36

After I stopped my car I backed up to where the man was struck, just as some men were carrying him over to the sidewalk. When I first saw these men they were not going straight across the track, but they were going diagonally at a point north of Twenty-fourth street, and were *kinder* facing me. There was nothing in their actions or movements to indicate to me that they did not see my car, and I did not know that they were not going to stop until I was within a car length of them, after I saw they were not going to stop I did everything in my power to stop. The men were in plain view of me all the time and I saw and was looking at them all the time after turning in the curve north of Twenty-fifth street."

At the close of plaintiff's evidence and at the close of all the evidence the defendant asked the court to direct a verdict in its favor but these requests were refused and the cause was submitted to the jury on the sole issue of whether the peril of the deceased was caused by the negligent manner in which the car was operated or was caused wholly or in part by negligence of the deceased. The issue of negligence under the "last chance" doctrine was withdrawn from the jury in an instruction given at the request of defendant and, as later we shall show, was abandoned by plaintiff. The record discloses a novel situation respecting the sub-mission of the cause to the jury. Plaintiff asked no instructions and did not object to those given at the request of the defendant which were numerous enough and which included the following:

"The court instructs the jury there is no evidence in this case that the defendant's motorman running and operating the car which struck deceased, could have stopped or checked the speed of his car, after deceased placed himself in a position of peril, in time to have avoided the collision and injury to deceased and hence the plaintiff cannot recover on that ground."

Since plaintiff asked no instructions and did not object to the giving of the instruction quoted, in effect, he approved it and agreed with defendant that it correctly declared the law and that the evidence most favorable to plaintiff would not sustain the charge of negligence under the humanitarian doctrine. Plaintiff is bound to the position he thus selected of his own volition in the trial court and will not be heard to renounce that position and shift to another in this court. No rule is better settled than that which holds a plaintiff in the appellate court to the theory on which he tried the cause. On the other hand, defendant is not bound by the submission in its instructions of contributory negligence as an issue of fact. Defendant was driven to take this position by the adverse rulings of the court on its demurrers to the evidence which challenged plaintiff's right to recover on any hypothesis and presented the question of contributory negligence as one of law. Driven from one line of defense in the trial court, a defendant may fall back to another but if he preserves his exceptions (as defendant did in the present case) he may return in the appellate court to his first position. Therefore defendant, despite its instructions, may return here to its demurrer to the evidence and again challenge the right of plaintiff to recover on any theory of the case In this view of the situation of the parties the judgment cannot stand on the charge of negligence under the humanitarian rule but must rest on the only remaining allegation of negligence, i. e., that the excessive speed at which the car was negligently operated was the sole cause of the injury and the deceased was not guilty in law of contributory negligence.

The negligence of defendant in running the car over a busy street at the speed of an express train is too apparent and indisputable for argument and we shall waste no words on that subject. But we think that negligence, to the extent that it operated to entrap and

imperil the unwary pedestrian, was assisted by his own contributory negligence, of the existence of which the record affords no room for reasonable difference of opinion. The duty of the deceased to pay close attention to his way over the tracks was a continuing duty and he was not excused from the performance of that duty by the presumption he was entitled to indulge, that the car would not be run faster than twenty miles per hour and at that speed was too far away to menace him. The law did not require him to look at the car constantly, but it did require him to give it ordinary attention and if such attention would have disclosed the reckless speed and manner in which it was being operated, he had no right to presume anything at variance with the plain facts within his observation. The statement of the son-in-law that they could not know until the instant before the collision that the car was running at excessive speed and was in striking distance, must be rejected for the reason that it is conclusively disproved by the undisputable facts of the situation. The car must have been from 900 to 1000 feet away when deceased was at the place where the witness says they first looked. It was not coming head on but was running at an angle that gave a view of its broadside of illuminated windows. The fact that it was running fast was apparent and must have been known to them if they looked. If these were all the facts one still might think there was some room for doubt concerning the negligence of the deceased. But all is removed by the further fact that the second look of the deceased was taken when he was in a place of safety on the west track and that look, if taken, would have told an ordinarily careful man in his situation that the car was then not to exceed seventy-five feet away; that it had traveled a distance fifteen times greater than he had traveled in coming from the sidewalk; that it was not checking speed and that a collision would be unavoidable if he attempted to cross in front of it. One of two conclusions is irre-

sistible. Either the two men did not look at all or, looking, gave no heed to what they saw. In either case the conduct of the deceased was negligence in law that precludes a recovery on the issues sent to the jury and compels a reversal of the judgment.

However, we shall remand the cause for the following reason: Though the issue of negligence under the humanitarian rule was abandoned by plaintiff at the last and is not now in the case, the evidence, we think, would have justified the court in submitting the issue had it not been abandoned, and it is but just to plaintiff to give him an opportunity to have his case tried on its only tenable ground. Doubtless the court, in ruling on the demurrer to the evidence, indicated the view of the law of the case, expressed in the instructions afterward given, and though plaintiff was not driven to the acceptance of that view, it would be an unnecessarily harsh rule that would deprive him of a fair opportunity to be heard on the real merits of his case. The jury well might have believed from the evidence that an ordinarily careful and humane man in the position of the motorman would have realized the peril of the deceased in time to have avoided the injury by checking speed or sounding an alarm with the gong. Where a car is approaching a crossing at ordinary speed a motorman may be justified in assuming that a pedestrian coming towards the crossing will stop in a place of safety and, in such case, would be under no duty to act on the contrary supposition until something in the appearance of the pedestrian indicated that he was going into danger. But where, as here, the motorman is approaching a crossing at highly excessive speed with the purpose of running by a regular stopping place, where people are waiting for his car, he has no right to indulge in any presumptions. Such conduct is extraordinary and calls for the exercise of extraordinary care to prevent it from becoming an agency of danger to others. Seeing a straggling group of persons slowly crossing the street

he should have apprehended that they might be surprised and imperilled by his recklessness. He had no right to arrogate to himself a paramount right to the street and compel others to take care of themselves or be injured. Under the peculiar circumstances of this case the presence of people on the street approaching the track was a danger signal which ordinary prudence would have dictated to the motorman to heed. The evidence of plaintiff would warrant the indulgence of such conclusion by the triers of fact and if the same evidence be admitted at subsequent trial the issue of "last chance" negligence should be sent to the jury.

The judgment is reversed and the cause remanded. All concur.