**MARKOVICH**

v.

**KANSAS CITY PUBLIC SERVICE CO.**

No. 43578.

Supreme Court of Missouri.

Division No. 2.

April 12, 1954.

Charles L. Carr, Kansas City, E. E. Thompson, Sam Mandell, Kansas City, Popham, Thompson, Popham, Mandell, Trusty & Green, Kansas City, of counsel, for appellant.

Paul C. Sprinkle, Sprinkle, Knowles & Carter, Thomas E. Walsh, Kansas City, for respondent.

BOHLING, Commissioner.

This is an appeal by the Kansas City Public Service Company, a corporation (defendant-appellant), from a judgment for $15,000 in favor of Mary Markovich (plaintiff-respondent) for personal injuries. Plaintiff submitted her case on primary negligence. Defendant contends plaintiff was guilty of contributory negligence as a matter of law and that error was committed in the giving of two of plaintiff's instructions.

Plaintiff was struck by a northbound streetcar of defendant at Troost avenue and 53rd streets, Kansas City, Missouri, about 6:05 a. m., December 31, 1949. Plaintiff had worked at Research Hospital off and on for 21 years and had been steadily employed there as a maid since 1941. She would take a northbound streetcar passing Troost and 53rd street at 6:10 a. m. to go to work. Troost is a north-south street, 51 feet wide, and 53rd street is an east-west street, 26 feet wide. Defendant has separate tracks on Troost for its southbound and northbound cars, stopping for southbound passengers at the northwest corner and for northbound passengers at the southeast corner of the intersection, which, at the time, was well lighted by street and other lights. There was evidence that defendant's northbound cars stopped sometimes a little before they reached 53rd street and sometimes right at 53rd street, usually with the front of the car even with the south edge of the pedestrian's lane across the intersection.

Plaintiff, who was 70 years of age, proceeded, in accord with her custom, eastwardly along the south side of 53rd street toward the streetcar stop at the southeast corner of Troost and 53rd streets. It was raining "pretty good" at the time, and plaintiff was using an umbrella and also carrying a package of laundry she had for a patient at the hospital.

Plaintiff stopped at the southwest curb of the intersection, looked both ways, and saw defendant's northbound car, with its lights on, a half block or a little more to the south, approaching the intersection. It was the car she wanted to become a passenger on, and: "When I seen the streetcar that far up, why, I started out."

Plaintiff, with her umbrella up, proceeded eastwardly at a normal walk in the pedestrian's lane, watching the streetcar as she did so. On direct examination, plaintiff stated she saw the streetcar when she was almost on the east rail of the northbound track and it was one or two streetcar lengths south of her. On cross-examination she testified her umbrella was pretty good size but she could see all right while using it; that as she walked east across the street, she could see the streetcar approaching and was watching it, "I didn't stand still to watch it, I was—"; that she thought it was coming about at the same speed when she reached the west rail of the southbound track, didn't know whether it was the same or a little faster or a little slower, not a great difference; that as she continued east she could see the car approaching; that as she stepped onto the west rail of the northbound track she thought she saw the streetcar, and it was then a streetcar length or more away; that she thought she was not struck while between the rails of the northbound track, but when she was at or had just passed its east rail; that she was too confused then to know what happened. On redirect examination she stated she last saw the streetcar when she was on the east rail of the northbound track and the car was a car length, maybe not quite two, away.

Robert McGowan, 11 years old at the time, was on his way to help serve Mass, and when a block east of Troost saw plaintiff a block west of Troost approaching the intersection. He corroborated plaintiff's testimony, and stated he first realized the streetcar was going to strike plaintiff when plaintiff was about the middle of the northbound tracks and the streetcar was about a length from her, and at that time plaintiff started to move northeast, trying to get out of the way. A passenger saw a face below the umbrella just prior to the impact.

Henry W. Wendel, Jr., the motorman, was 25 or 26 years of age and on defendant's "temporary board", that is, he would switch from one run to another every two weeks and had been on the Troost avenue run two or three days. He was called to the stand by plaintiff. He testified the visibility was poor; that it was raining and foggy and the windshield wipers were working; that when 50 to 75 feet south of 53rd street he looked but saw no passengers at the streetcar stop or anyone crossing the intersection; that an automobile, traveling fast, passed the streetcar and cut in front of it about 50 or 75 feet south of the intersection and splashed water on its windshield. He first saw plaintiff when the streetcar was approximately 20 feet south of her, and plaintiff was "going over," "getting ready to go over" the west rail of the northbound track. The streetcar was a "P.C." type car, with the rear door at the side, and 46 feet long.

Plaintiff testified she could not estimate the speed of the streetcar, but stated it appeared to be moving "like it generally does." Some witnesses placed its speed at 20 miles per hour as it approached the intersection, stating the speed was slackened to 15 to 18 miles per hour as an automobile cut in front of it. Other witnesses testified that there was no automobile. A passenger stated the striking of plaintiff and the application of the brakes were almost simultaneous.

The streetcar stopped 49 feet beyond the south curb line of 53rd street, and plaintiff was between the streetcar and the east curb of Troost avenue, about 40 feet north of the south curb line of 53rd street. There was a brush mark on the streetcar a few inches west of its east side and the courtesy light, about head high, on the right hand point of the streetcar, right at the corner, just below the window was broken and glass was in the pedestrian lane plaintiff was using.

Plaintiff received serious injuries.

Defendant argues that plaintiff deliberately walked into the path of the northbound approaching streetcar which, according to her testimony, she had constantly watched after leaving the west curb; that she could have stopped at any instant, and her knowingly walking in front of the approaching streetcar when she could have remained in a position of safety constituted contributory negligence as a matter of law. Defendant cites many cases, among which are: Reno v. St. Louis & S. R. Co., 180 Mo. 469, 481, 482, 79 S.W. 464, 467; Lackey v. United Rys. Co., 288 Mo. 120, 231 S.W. 956, 960, [1, 3–5]; Fanning v. St. Louis Transit Co., 103 Mo.App. 151, 157, 78 S.W. 62, 64; Grout v. Central Electric R. Co., 125 Mo.App. 552, 559, 102 S.W. 1026, 1028; Ross v. Metropolitan St. R. Co., 125 Mo.App. 614, 619, 102 S.W. 1036, 1037; McGee v. St. Joseph Ry., Light, Heat & Power Co., 153 Mo.App. 492, 498, 133 S.W. 1194[4]; Gordon v. Metropolitan St. R. Co., 153 Mo.App. 555, 564, 134 S.W. 26, 29; Epstein v. Kansas City Public Service Co., Mo.App., 78 S.W.2d 534, 535[3]; Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 234 S.W.2d 540, 546[8].

In some of defendant's cases the plaintiff did not exercise due care to make timely discovery of the clearly visible streetcar, the Reno, Ross, McGee, and Frandeka cases, or having seen it did not give it the additional attention required in the attending circumstances for making the issue of contributory negligence one for the jury, the Fanning and Grout cases. In others plaintiff was crossing a street between street intersections, the Reno, Gordon and Epstein cases, or was struck when entering upon the streetcar track, the Ross case. In the Lackey case, the court considered contributory negligence was for the jury, stating a pedestrian might indulge certain assumptions in the absence of notice to the contrary.

■ One of defendant's instructions submitted plaintiff's contributory negligence to the jury. The physical differences between a pedestrian and a streetcar require the pedestrian to take precaution for his safety; but he has an equal right to the use of a public crossing. Pedestrians are required to exercise ordinary care. They are not held to the very highest care and judgment. There is a zone of reasonable safety wherein the issue of contributory negligence is for the jury. It has been said a pedestrian upon a public crossing need not anticipate negligence on the part of the operator of the streetcar. Spencer v. Kansas City Public Service Co., Mo. App., 250 S.W.2d 187, 192[7].

■ The instant case involves circumstances differing from the circumstances in the cases relied on by defendant. Plaintiff entered upon the intersection far ahead of the streetcar, the car on which she was accustomed to and intended to take passage to her work. Her conclusion at the curb that she could accomplish her purpose in safety was warranted. She was using an umbrella for protection against the weather. She testified there was no person in the street and she saw no automobile that morning. Robert McGowan's testimony was to like effect. She was plainly visible in the well lighted intersection. She did not have notice the motorman would not see her until 20 feet away. Her testimony on cross-examination that she could see the streetcar and was watching it, as defendant argues, was to the effect she had it constantly under observation; but reading her testimony as a whole the jury could find that while she was giving attention to the approaching streetcar she was also protecting herself from the weather and was not continuously observing it. The law did not require that plaintiff look for the streetcar at each step of her passage along the pedestrian lane. Maloney v. United Rys. Co., 183 Mo.App. 292, 297, 298, 167 S.W. 471, 472. Plaintiff did not testify that she signalled the motorman to stop. We think it permissible on the part of the jury to infer that the motorman, had he been attentive, would have given consideration to the probability that in the attending circumstances plaintiff intended to become a passenger on the streetcar from the fact of her progress toward the stop without hesitation within his view when she could have stopped had she not intended to become a passenger. That she

became a passenger practically daily on this streetcar at this point is for consideration. When she was on the northbound track near the east rail, she placed the streetcar a length or more, 46 feet or more, away. Robert McGowan testified he first realized plaintiff would be struck when she was in the middle of the northbound track and the streetcar was about a streetcar's length away. She was struck just as she was clearing its path. The case, perhaps close, appears to be one where plaintiff's judgment of the speed of the car or its distance from her was at fault, and whether this was due to carelessness or was a reasonable mistake in judgment was an issue of fact for the jury. Strauchon v. Metropolitan St. R. Co., 232 Mo. 587, 597 (II), 135 S.W. 14, 18(2). Different factual situations are presented in the different cases, but we think the following, among others, give support to our conclusion: Ferdente v. St. Louis Public Service Co., Mo.Sup., 247 S.W.2d 773, 777, 778; Wilson v. Wells, 321 Mo. 929, 13 S.W.2d 541, 544[2, 3]; Schimmelpfenning v. Wells, Mo.Sup., 24 S.W.2d 154, 158[4, 5]; Spencer v. Kansas City Public Service Co., Mo. App., 250 S.W.2d 187, 192[6, 7].

■ Defendant makes the point that plaintiff's verdict directing instruction "prejudicially enlarged, and unduly emphasized defendant operator's duty to plaintiff."

The instruction required findings, among others, that defendant's motorman was operating a northbound streetcar on Troost avenue approaching its intersection with 53rd street and that *plaintiff was crossing Troost avenue* on the south side of 53rd street, if you so find, *for the purpose of boarding said northbound streetcar at its regular stop* at the southeast corner of 53rd street and Troost avenue, if you so find, and * * * as said streetcar traveled to the north *that the operator thereof failed to keep a lookout ahead for pedestrians crossing in the manner that the plaintiff was crossing, as aforesaid,* and * * * that *had the operator* thereof *in the exercise of ordinary care kept a lookout that he could have seen the plaintiff crossing said Troost*

*avenue for the purpose of boarding said streetcar*" so that he could have stopped the streetcar at the regular stop without striking plaintiff, if you so find, "and * * * that by reason of the failure to keep a lookout, if so, *as aforesaid*" the motorman ran the streetcar against the plaintiff and injured her, if so, "and * * * that it was negligence on the part of the said streetcar operator not to keep a *lookout as aforesaid* and that negligence, if any," directly caused plaintiff's injuries et cetera, plaintiff was entitled to a verdict.

If the jury found the facts hypothesized in the instruction, it could reasonably conclude the motorman was negligent. Defendant in its argument, not in its point, states the motorman was under no duty to divine plaintiff's intention to cross in front of the streetcar and had a right to assume, until a different intention became apparent, that plaintiff would not step in front of the streetcar. Lackey v. United Rys. Co., 288 Mo. 120, 231 S.W. 956, is stressed. That case holds the pedestrian (supra 231 S.W. 960 [4]) and the motorman (supra 962[5]) may assume that the other is in the exercise of due care until the converse becomes reasonably apparent. A defendant owes no duty under the humanitarian doctrine until the plaintiff's imminent peril arises. What is said with respect to the right to assume the exercise of due care under the humanitarian doctrine, the Lackey case, supra 962[5]; Johnson v. Kansas City Public Service Co., 358 Mo. 253, 214 S.W.2d 5, 10, is not necessarily controlling when the defendant may be held for primary negligence. In McGee v. St. Joseph Ry., Light, Heat & Power Co., 153 Mo.App. 492, 498, 133 S.W. 1194[5, 6], the instruction required the motorman to have seen plaintiff in time to have stopped by keeping a vigilant lookout. The instant instruction exacted only the exercise of ordinary care on the part of the motorman. It required findings that the motorman failed to keep a lookout for pedestrians crossing the street in the manner plaintiff was crossing, and that had he, in the exercise of ordinary care, kept such lookout he would have seen plaintiff crossing the street for the purpose of boarding the streetcar et cetera. Under the instruc-

tion, plaintiff assumed the burden of establishing the submitted facts before being entitled to a verdict. It is not claimed that essential findings were omitted from the instruction. If nonessential findings were required for a plaintiff's verdict, defendant was not harmed. Error has not been established.

■ Plaintiff's case was submitted on negligence on the part of the motorman in failing to maintain a proper lookout. The motorman stated he first saw plaintiff when she was 20 feet away. The jury could find he should have seen her in the pedestrian lane for a much greater distance. Neither Blythe v. United Rys. Co., Mo.App., 211 S. W. 695, 697[3, 4], where plaintiff failed to prove actionable negligence, nor Morris v. Kansas City Light & Power Co., 302 Mo. 475, 258 S.W. 431, 432[4], compel a holding that the instant plaintiff's injuries were the proximate result of a failure to exercise due care on her part. Her contributory negligence and defendant's actionable negligence were jury questions.

■ Defendant states plaintiff's measure of damages instruction "erroneously directed the jury to return a verdict for such of plaintiff's 'expenses as you may find directly resulted from plaintiff's injuries' even though there was no testimony that such expenses were reasonable." It is proper and generally considered essential under Missouri holdings to show the necessity of the services and the reasonableness of the charges for allowances for medical expenses in personal injury actions. Defendant cites Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S.W.2d 713, 717[8, 12]; Murphy v. S. S. Kresge Co., Mo.App., 205 S.W.2d 252, 256[3, 6]; Girratono v. Kansas City Public Service. Co., Mo.App., 243 S.W.2d 539, 546[17], and 363 Mo. 359, 251 S.W.2d 59, 65[9,10]. See 25 C.J.S., Damages, § 91, p. 634, Expenses, "Medical attention, nursing and medicine"; 15 Am.Jur. 799, §§ 359, 360. Errors of this nature may be cured by a remittitur. The Hamilton case, supra; Miller v. Kansas City Western R. Co., 180 Mo.App. 371, 378, 168 S.W. 336, 339[11].

The jury returned a verdict for $20,000. Defendant's motion for new trial was overruled upon plaintiff's compliance with the court's order to enter a remittitur of $5,000. Judgment for $15,000 followed. Plaintiff says the remittitur took care of all excessiveness in the verdict. Plaintiff received multiple injuries, her condition was bad and she could have gone either way. She had a cerebral concussion and a laceration of her scalp; multiple fractures of her right ribs, her rib margins puncturing her lung and collapsing it; multiple fractures involving the upper thigh and hip; a comminuted fracture of the right hip and upper femur; fracture of the superior and inferior ilia or rami of the pubis, pelvic bone, on the left side; fracture of the inner malleous of the right ankle. Her right shoulder and knee were injured. Plaintiff testified she was unconscious for more than a week; that she was in the hospital between three and four months; that Drs. Zuber, Hunt and Mueller gave her medical and surgical attention; that the right side of her body was in a cast from her mid-rib level down to her toes; that the cast was removed sometime in June, 1950, and that she was confined to her bed at home for a month or two after that. For a time she used a wheelchair. At the time of trial, September 29, 1952, she complained of pain in her head, right arm, side and leg. A medical witness stated the x-rays confirmed her complaints. She has great difficulty in moving about with a cane. She has limitations of motion in her right arm, shoulder, hip, knee, ankle and leg. Her condition is permanent. It will never improve. It is the result of her injuries. She can never work as she did before. This testimony is not contradicted.

■ Plaintiff undoubtedly incurred substantial expenses for medical and surgical services, hospitalization, nursing and medicines. Defendant makes no point that the $15,000 judgment is excessive. Plaintiff established that she was earning $100 a month. At the time of trial she had lost $3,300 in wages. Giving consideration to the extent and permanency of plaintiff's injuries, the verdict for $20,000, the remit-

titur of $5,000, and the judgment for $15,-000, we conclude that defendant has not established reversible error in the giving of plaintiff's instruction on the measure of damages. Consult Lindsey v. Williams, Mo. Sup., 260 S.W.2d 472, and cases there cited having a bearing on the amount of the damages. Under plaintiff's evidence a general instruction to allow for medical expenses was appropriate and, under the point stated in defendant's brief, defendant should have requested a limiting or qualifying instruction. State ex rel. United Rys. Co. v. Reynolds, 257 Mo. 19, 165 S.W. 729, 733[5]; Hoover v. St. Louis Electric Terminal R. Co., Mo.Sup., 227 S.W. 77, 79[2], and Mo. App., 216 S.W. 984, 987(III); Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 66 S.W.2d 903, 909[21].

The judgment is affirmed.

WESTHUES and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.