WILLIAM M. WILSON, Appellant, v. ROLLA WELLS, Receiver of UNITED RAILWAYS COMPANY OF ST. LOUIS.—13 S. W. (2d) 541.

Division One, February 1, 1929.

*L. L. Boehmen* and *A. L. Hirsch* for appellant.

932

*T. E. Francis* and *B. G. Carpenter* for respondent.

LINDSAY, C.—This is an action for damages for injuries suffered by the plaintiff through being struck by a street car operated by defendant, while plaintiff was attempting to walk northward across Olive Street from the southeast corner to the northeast corner of the junction of Olive Street and Jefferson Avenue, in the city of St. Louis. There are double tracks on both streets. At the close of the plaintiff's case the court gave the peremptory instruction offered by defendant, and later overruled plaintiff's motion to set aside the involuntary nonsuit taken by plaintiff and this appeal followed. The record shows this was the second trial, the plaintiff having taken a nonsuit upon the first trial.

The outstanding question in the case is whether plaintiff was guilty of contributory negligence as a matter of law. Another question presented is whether the plaintiff by his petition pleaded a violation of the humanitarian doctrine on the part of defendant, as well also the question whether, under the evidence, plaintiff made a case of violation of the humanitarian rule. For the reason that this question is raised as to the sufficiency of the petition, and also because the petition pleads facts in unusual detail, we set out all the allegations of the petition containing the charges of negligence.

"Plaintiff for cause of action against defendant states that on, to-wit, the 9th day of December, 1921, plaintiff after alighting from the front end of a Jefferson Avenue car bound north, and standing at the regular stopping place on the south side of Olive Street, walked toward the southeast corner of Jefferson Avenue and Olive Street; both of said streets being public thoroughfares in the city of St. Louis, Missouri, looked in a westerly direction and saw an eastbound Olive Street car owned and operated by defendant, as receiver, standing on the eastbound track at the regular stopping place on the west side of Jefferson Avenue, at Olive Street, and he proceeded rapidly toward a westbound Olive Street car which was standing at the regular stopping place at the east side of Jefferson Avenue on Olive Street, which car he intended to board, if it was a Delmar car, as a passenger for hire, for which he legally held a proper transfer obtained on said Jefferson Avenue car; that from the point from which he saw the eastbound Olive Street car standing at the west side of Jefferson Avenue to the curb of the east sidewalk of Jefferson Avenue is but about six feet, and from the south rail of said eastbound Olive Street car track to the curb of the south sidewalk of Olive Street is about ten and three-quarters feet; that he did not see the said eastbound

street car start, and did not know that it was in motion, and did not again see the said eastbound Olive Street car from the time he saw it stationary at said regular stopping place on the west side of Jefferson Avenue until he was in the path of said eastbound Olive Street car when it was too late for him to escape from being struck by said car. Plaintiff states that after he had seen the eastbound Olive Street car standing at the west side of Jefferson Avenue as aforesaid, he thought he had ample time to cross to said place to board a Delmar car bound west, and would have had ample time had the motorman of said eastbound Olive car obeyed the laws and the ordinances, which ordinances are hereinafter set out, and he directed his attention to the westbound Olive Street car which he intended to board as aforesaid, by passing past the front end of it and boarding it at the receiving end, if it were a Delmar car; he traveled on the east crossing northwardly on Olive Street, and could have gotten out of the path of the said eastbound Olive Street car had it not started up suddenly and rapidly in excess of the lawful rate of speed and in violation of said ordinances, and without giving any warning of its approach.

''That plaintiff proceeded to cross said Olive Street walking on the east crossing as aforesaid, but just as he was able to determine that the car standing on the westbound track of Olive Street as aforesaid was not a Delmar car, he slackened his speed, and within about a second he was struck, without negligence on his part, by said eastbound Olive Street car.

''That neither the motorman of said eastbound Olive Street car, who was in charge of the operating apparatus, nor any other person, sounded, rang or caused to be sounded or rung, a warning gong or bell, or gave any warning of the approach of said car, and plaintiff was not cognizant of the danger which threatened him.

''That the said motorman saw plaintiff after he left the south side of Olive Street on said crossing, going in a northerly direction on said crossing, or could, by the exercise of ordinary care, have seen him crossing said Olive Street, approaching said eastbound track, in time to have stopped said car before it struck plaintiff, but that instead of so doing, said car was negligently caused and suffered by said motorman to strike plaintiff, and to injure him.

''Plaintiff further states that defendant, through said motorman, violated Section 1054, page 1093, of the Revised Code of St. Louis, 1914, and particularly Paragraph Fourth thereof, which provides that the motorman or any other person in charge of each car shall keep a vigilant watch for all vehicles and persons on foot, either on the track or moving toward it, and on the first appearance of danger to such person the car shall be stopped in the shortest time and space possible; in this, that had said motorman been keeping a vigilant watch as aforesaid he would have seen plaintiff moving toward

the track and in danger of being struck by the car, in time to have stopped said car before striking plaintiff.

"Plaintiff further states that defendant, through said motorman, violated Section 1061, page 1099, of the Revised Code of St. Louis, 1914, and particularly Paragraph Third thereof, which provides that whenever any car is about to pass another car in the opposite direction at a point where it is permissible for passengers to alight from or to board a car, said car shall proceed at a rate of speed not over three miles per hour, and the motorman shall ring a warning gong or bell; in this, that said car proceeded at a rate of speed greatly in excess of three miles an hour, and that the motorman did not ring a warning gong or bell, although the car he was operating was about to pass another car bound in the opposite direction at a point where it is permissible for passengers to alight from and to board a car."

Afterward, followed a statement of plaintiff's alleged injuries. The answer was a general denial followed by a plea of contributory negligence alleging "that whatever injuries plaintiff may have sustained, if any, were caused by his own carelessness and negligence directly contributing thereto in going toward a street railway track and in going in close and dangerous proximity to a moving street car when he saw and heard, or by the exercise of ordinary care could have seen and heard, the moving street car in time to have remained away from the street railway track, and in time to have remained away from in close and dangerous proximity to the alleged street car and thereby have avoided the collision."

The essential question in the case arises upon the counter-charges made, that the defendant was guilty of negligence causing plaintiff's injury, and on the other hand, that plaintiff was himself guilty of negligence as a matter of law. This requires a consideration of the evidence.

Olive Street extends east and west, and Jefferson Avenue north and south. The evidence shows that the width of both streets from building line to building line is sixty feet, and from curb to curb, is thirty-six feet. At about 10:30 P. M. of December 9, 1921, the plaintiff alighted from the front end of a northbound Jefferson Avenue car which had stopped at the usual stopping place, near the south line of Olive Street. Upon alighting, he took two or three steps to the east; looking west, he saw an eastbound car on the south track on Olive Street, which had stopped near the west line of Jefferson Avenue, for the discharge and taking on of passengers. He looked north, and saw a car on the north track on Olive Street, which had stopped near the east line of Jefferson Avenue to discharge and take on passengers. He intended to board the last-mentioned car if it was a Delmar car. He walked northeastward to the east curb of Jefferson Avenue, a distance from where he stood of five or six feet, and thence

north over the south sidewalk of Olive Street, a distance of ten feet or more, and thence north, upon the crosswalk upon Olive Street. The distance .from the south curb of Olive Street to the south rail of the first track on which stood the eastbound car, was a little more than ten feet. The plaintiff said he walked fast; that he could not see the sign on the westbound car so as to know whether it was a Delmar car, until he arrived at the south rail of the south track on Olive Street; that when his foot was over, or about over, the south rail of the south track, he saw that the westbound car was not a Delmar car, and hesitated or stopped, and at that instant he was struck by the eastbound car which in the interval had started and moved somewhat rapidly eastward. There was testimony that the eastbound car moved faster than a man could walk. A witness for plaintiff testified that at the time it struck the plaintiff it was moving at a speed of twelve ·miles an hour. The same witness testified that he saw the eastbound car when it started; and also saw the plaintiff about the time he was near the east curb of Jefferson Avenue. This witness stated that the plaintiff started from near that curb, and the eastbound car started from its stopping place, at about the same time. This witness testified that he (the witness) "had just gotten off the eastbound car and the car started up. The wheels were just spinning around very fast, and it started off with a jerk." The testimony was that there was no sounding of a gong or warning on the eastbound car at the time it started, or in its movement before it struck the plaintiff. After the plaintiff started to walk over the Jefferson Avenue curb to the sidewalk and thence over the crossing, he did not look again to the west, but looked only toward the westbound car on the north track which he desired to board if it was a Delmar car. He testified that he was thinking of his safe· ty in respect to the westbound car, if it should start before he could get across in front of it, over the north track; that he saw passengers getting off that car; that he expected the motorman of the eastbound car to sound the gong before starting the car, and, no gong being sounded, he felt entirely safe from being struck by that car. The evidence shows that plaintiff got one or both feet over the south rail of the south track, and was struck by the front end of that car. He was thrown toward the southeast. The car was stopped at a little more than its length after striking the plaintiff. There was testimony that the car in question, under the conditions shown to exist, if going three miles an hour, could have been stopped in about four and one-half feet; and, if going twelve miles an hour. could have been stopped in between thirty and forty feet. There was testimony to the effect that the weather was dry, but that the eastbound car was started in such manner that the wheels slipped and that a screeching noise was made. The place was well lighted, and was a place where there was much traffic, and there was heavy traffic on

that night. Plaintiff testified that he heard a noise, but could not tell what it was. In answer to a question, he said: "As far as rattling of wheels or rumbling of wheels, I heard a noise, but couldn't distinguish it, what it was."

He further testified that as he walked toward the westbound car the reason he didn't look the second time, was because when he saw the eastbound car standing where it was, he felt perfectly safe, and when there was no warning gong he still felt safe that the eastbound car was not approaching. The plaintiff was familiar with this crossing, having, as he said, transferred nearly every night for about two years, from the Jefferson Avenue car, to a Delmar car on the Olive Street north track. The evidence shows that from the point where plaintiff was when he saw the eastbound car, as it stood, to the point of collision, he walked approximately twenty-five feet, and that the car from the point at which it stood moved approximately sixty feet, to the place of collision.

Without discussion it can be said that there was evidence tending to show negligence on the part of defendant. The question whether plaintiff must be held to have been guilty of contributory negligence as a matter of law, is to be determined upon a consideration of the conditions existing as hereinbefore set out, with some further circumstances appearing in the record. The plaintiff alleged and his evidence showed that defendant operated all the cars and tracks which have been mentioned; that the plaintiff as a passenger for hire on the Jefferson Avenue car had a transfer ticket for use on a Delmar-Olive westbound car, the car which he desired to take; that looking toward the westbound car, because the sign on that car was "on a slant," he could not determine that it was not a Delmar car until he reached the south track on Olive Street. The transfer of passengers, from one car to another running a different direction, at such intersections and in heavy traffic, is an occurrence so common as to be taken into consideration, not only in respect to the act of defendant in causing the eastbound car to move over the crossing at the speed shown, and without sounding the gong, but in determining whether plaintiff in the situation shown, was guilty of negligence as a matter of law.

At the time plaintiff started toward the westbound car there was a car stopped on three of the four several corners of the intersection, and all of them discharging and taking on passengers. Passengers alighting at about the same time as the plaintiff, and the plaintiff himself, desiring to take another car, and for that purpose required to cross the tracks, with reason, could assume that the car which would be required to pass in an opposite direction, the car toward which such passengers were moving, would not proceed on its way, without any warning and at a speed, excessive under the circumstances, and violative of the ordinances. The westbound car toward which the plaintiff was moving, was discharging passengers from its front end,

near the east line of Jefferson Avenue. The evidence shows that twelve or fourteen passengers alighted from the eastbound car, and a number from the northbound Jefferson Avenue car. The evidence tends to show that plaintiff was listening, and the real question to be determined is whether he was guilty of contributory negligence as a matter of law, because, in moving northward toward the car which he desired to take if it was a Delmar car, he did not look again to the west before stepping over the rail of the eastbound track. Negligence does not become a question of law alone, unless the acts constituting it are of such a character that all reasonable men would concur in pronouncing them so. Human conduct is to be judged by human standards.

The plaintiff had a right to assume in the absence of knowledge or notice to the contrary, that under the conditions existing, the eastbound car would not be started suddenly and run without warning at a speed dangerous under the circumstances, and could in the same way assume the car would not be run in excess of the ordinance rate of speed and without sounding any warning. [Unterlachner v. Wells, 317 Mo. 181, 199; Lackey v. United Railways, 288 Mo. l. c. 141; Harrington v. Dunham, 273 Mo. l. c. 424.]

Generally speaking, one who is about to cross a street railway track should both look and listen for the approach of cars, but we do not think this can be held to be an inflexible rule, or enforced with such strictness, as in the case of an ordinary steam railway. In the nature of things, whether failure to look as well as to listen, constitutes negligence, must depend on the peculiar circumstances of each case.

In considering this question we have given attention to the cases cited by counsel for defendant: Coggin v. Wells, 273 S. W. 1107; Hoodenpyle v. Wells, 291 S. W. 520; Epstein v. Wells, 284 S. W. 845; Osborn v. Railroad, 179 Mo. App. 257; Gubernick v. United Railways, 217 S. W. 33; Mockowik v. Railroad, 196 Mo. 570; Kelsay v. Railroad, 129 Mo. l. c. 374; Huggart v. Railroad, 134 Mo. l. c. 679; Boring v. Railway, 194 Mo. 541, 548; and we have considered also cases such as Giardina v. Railroad, 185 Mo. 330; Hornstein v. United Railways, 195 Mo. 440; Heigold v. United Railways, 308 Mo. 142; Hawkins v. Wells, 297 S. W. (Mo. App.) 193, 195; Steigleder v. Lonsdale, 253 S. W. 487, 490; McDonald v. United Railways, 211 Mo. App. 149; Bosley v. Wells, 260 S. W. (Mo. App.) l. c. 127.] Reference to the peculiar facts in each of these cases is not practicable. Only a few will be referred to.

In Goggin v. Wells, supra, the plaintiff was struck by a westbound car while attempting to go north over a crossing from the southwest corner of the crossing. She had seen this westbound car standing on the northeast corner of the crossing before she started; she did not look again, and was struck. There was no charge of violation of the

three-mile-speed ordinance, and there is no statement that there was another car stopped for discharging passengers, which the westbound car had to pass in an opposite direction. There also, the plaintiff's attention was not attracted by another car or vehicle. It was said there was nothing to mislead or deceive the plaintiff.

In Hoodenpyle v. Wells, supra, there was a condition in some respects similar to that in the Goggin case. The plaintiff testified that he looked and saw no car, but it was held the conclusion was inevitable that he either did not look, when to look was to see, or, that he looked and saw the approaching car, but attempted to cross the track ahead of the car. It was said, at page 522: "This is not a case where plaintiff saw the approaching car, but misjudged its speed, or where he saw it stopped discharging passengers, and believed there was sufficient time for him to cross in front of it, or where it turned a corner and came into view after he had looked for the last time."

In Epstein v. Wells, supra, the plaintiff was driving a small truck in broad daylight. He saw the street car which struck him, approaching, when it was sixty feet away, and the plaintiff was fifteen or twenty feet from the track; he changed the speed of his truck, and attempted to cross in front of the street car. It appears there were some passengers standing on the curb, but the opinion shows, page 847, that the plaintiff did not say he relied upon the presumption that the car would stop for these passengers. "He said he did not note how fast the street car was traveling, further that he did not know the ordinance speed, and he did not even intimate he relied upon the car running at the lawful rate." In the case at bar it can be assumed that plaintiff knew the provisions of the ordinances as to speed and sounding the gong under the circumstances existing. Reference is made in the opinion in Epstein's case to Mockowik v. Railroad, 196 Mo. 571, but the ruling on that point in the Mockowik case was overruled in the Unterlachner case, supra. It was held by the Court of Appeals in Epstein's case, that even if the plaintiff were allowed the benefit of the presumption that the car would stop for passengers, he could not rely entirely upon such situation as an excuse for his failure to avoid entering the danger zone under such circumstances as were found to exist; and it was further held that under the circumstances he could not rely entirely upon an obedience to custom or ordinance requirements, to the extent of failing to make use of his own senses for his own protection.

In Gubernick v. United Railways Company, supra, plaintiff was driving a horse. He saw the car which struck him when it was near, and approaching, and his own rig was near the track. In that case the speed of the car was within the limit fixed by the speed ordinance. There was a charge of failure to warn by sounding a gong or ringing a bell, and this was held unavailing to the plaintiff, because, he said

he saw the oncoming car, although he could not tell its speed at the time. In that case, the seeing of the car, approaching, gave him all the notice which he would have had if the gong had been sounded.

In the case at bar, the car, when plaintiff saw it, was only about sixty feet away and was standing still for the discharge and taking on of passengers, and the seeing of it by plaintiff under the circumstances existing was not, to him, all of the notice which would have been given by the sounding of the gong.

In Giardina v. Railroad, supra, the plaintiff was injured through being struck by a street car. In that case an eastbound car on the south track was stopped for receiving passengers. The plaintiff ran to the rear end of the car to hand a key to his brother who was on the platform. Plaintiff having done so, turned back north, and stepped upon the north track and was struck by a westbound car. In that case there was in evidence printed rules of the company making it the duty of the motorman to sound the gong within one hundred feet of the crossing, to sound it once or twice on approaching near the crossing, and to sound the gong at fifty feet before meeting another car and while passing it. The plaintiff in that case testified that he knew the custom in the operation of cars, and knowing it, paused behind the eastbound car, and listened, and, hearing no gong, concluded no car was coming west and stepped out and was struck. It was held that he was guilty of contributory negligence, barring recovery.

In Hornstein v. United Railways, supra, the plaintiff alighted from a car, and passed behind it in an attempt to cross the other track. He failed to wait until the car from which he alighted had moved, so as no longer to obstruct his view along the other track. There was in evidence also, in that case, the rule of the company as to the sounding of the gong when passing a car discharging passengers, or when at or near crossings and directing the car to be slowed up. An element considered in that case was the fact that the car which struck the plaintiff was going at a speed of seven miles an hour, which was held to be not an unlawful and dangerous rate of speed in the absence of an ordinance fixing a slower rate.

We have heretofore referred to the case of Unterlachner v. Wells, 317 Mo. 181. In that case the plaintiff was on the sidewalk, thirty-five or forty feet away from the track of the street car, which he saw approaching and which was then about one hundred and fifty feet away. He did not know the speed at which it was moving. He knew the southwest corner of the street intersection which the car was approaching was a regular stopping place for street cars, and that a passenger had waived for the car to stop. The plaintiff ran the thirty or forty feet, and was so intent on getting across the track and boarding the car, that in running he did not observe the speed and movement of the car. His running brought him upon the

track, and too late to avoid being struck. It was said, at page 197 : ''He did have the right to assume (without knowledge to the contrary) that the car was running not to exceed fifteen miles per hour. Had it been running (even without stopping, as it should have done), plaintiff would have crossed in perfect safety.'' Holding in that case that plaintiff had the right to assume that the car would stop, it was said that such assumption ''disrobes him of contributory negligence as he ran the thirty-five or forty feet.'' There, the question of plaintiff's contributory negligence hung upon the assumption allowed the plaintiff from what he had seen, an assumption that a moving car would stop. Here also, the question is upon what plaintiff would assume from what he saw of the conditions, and what the operator of the eastbound car must have seen of the two other cars standing and discharging passengers, and from which plaintiff might assume that the eastbound car would not proceed, except at slow speed, and its movement made known by the sounding of the gong.

We refer also to Heigold v. United Railways Company, 308 Mo. 142. In that case the plaintiff and a companion were on the west side of the two north-and-south tracks. The plaintiff desired to take a northbound car, which would come on the east track. His companion, one Carey, desired to take a southbound car to come on the west track. When they were within a few feet of the west track and approaching it from the west, a southbound car was seen approaching, one hundred and seventy-five to two hundred feet north of them. Carey referred to it as his car, coming, and started toward the regular stopping place for that car, and waived for it to stop. There were passengers waiting to take it. The plaintiff, knowing these things, started across the tracks to take a westbound car which he saw approaching. He did not walk straight east across the west track, but walked southeast on to the west track and was struck by the southbound car, which had not stopped at the stopping place, but had increased its speed. There was no reference to the failure of the plaintiff to look, before stepping on the southbound track, to see if the car had stopped. The plantiff charged violation of the Vigilant-Watch Ordinance. It was held, under the facts foregoing, that the evidence tended to show the motorman was not keeping the vigilant watch demanded by the ordinance, and that plaintiff was not guilty of contributory negligence as a matter of law; that he had a right to assume the car would stop to take up passengers waiting at a regular stopping place, and he had no right to think that the speed would be increased, and without the increase in speed, he would have reached the place in safety. At the expense of repetition, it is observed in the instant case the eastbound car was stopped discharging passengers. Two other cars, one on the northeast and one on the southeast corner were stopped discharging passengers. The eastbound car, in proceeding, had to pass the westbound car while the

latter was stopped and discharging passengers, and toward the last named car plaintiff was proceeding. We hold that under the conditions existing he had the right to assume that the eastbound car would not start and proceed, without warning, and at a speed in excess of three miles an hour, and that his failure to look as he passed from the sidewalk over the crossing, was not such palpable negligence as to leave no room for reasonable difference of opinion, and that the question of his contributory negligence was a question for the jury.

There remains the question whether the petition charges a violation of the humanitarian rule. That question is raised by the defendant, as also the further question, that anyhow, under the evidence plaintiff was not entitled to go to the jury under the humanitarian rule. The constitutive elements of a case under the humanitarian rule are stated in Banks v. Morris, 302 Mo. l. c. 267, as follows: (1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured.''

It is our conclusion that the petition does not meet the requirements of a charge of negligence under the humanitarian rule. The plaintiff charges primary negligence in failing to sound the gong or give any other warning; violation of the Vigilant-Watch Ordinance; violation of the three-mile speed ordinance, and otherwise charges no more than primary negligence in failing to stop the street car and to avoid striking the plaintiff. The petition does not allege that plaintiff was in a position of peril or in imminent peril; and in our view, the various allegations must be held to have been made with the purpose of charging defendant with the several kinds of primary negligence, and not in an attempt to state a case under the humanitarian rule. In consideration of our holding upon the question of plaintiff's contributory negligence, and upon the scope and effect of the plaintiff's petition, we lay aside the question of whether plaintiff's evidence made a case for the jury under the humanitarian rule.

For the reasons above mentioned, the judgment is reversed and the cause remanded. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.