GEORGE W. KING, Appellant, v. FRED M. RIETH, EDWARD H. RIETH and ALBERT J. RIETH.—108 S. W. (2d) 1.

Division One, July 30, 1937.

*John Neu, .Jr.,* and *Earl M. Pirkey* for appellant.

*Strubinger & Tudor* for Fred M. Rieth; *William H. Tombrink* for Edward H. Rieth and Albert J. Rieth.

HYDE, C.—This is an action for damages for personal injuries caused by a collision between plaintiff's automobile and a truck, alleged to have been owned and·used by defendants operating as a partnership. Plaintiff sued for $25,250. The jury found for defendants. Plaintiff has appealed from the judgment entered on their verdict.

The case was submitted on what seems to have been a general charge of primary negligence (negligently caused and permitted the truck to strike plaintiff's car), although the petition alleged excessive speed, failure to keep the truck as close to the right-hand curb as practicable, failure to swerve, and failure to warn. Failure to warn was withdrawn by an instruction requested by defendants. It is not contended that plaintiff failed to make a. jury case on any other charge of negligence. Plaintiff's evidence was that he was driving south on Grand Boulevard·in St. Louis about eleven P. M. on April 12, 1933; that he kept his car to the west of the center of the street; that he saw the truck coming north, swinging from one side of the street to the other; that he stopped his car; and that the truck crossed the center of the street from the east side striking his car while it was stopped on the west side. There was also evidence that the truck was going at least forty miles per hour and had passed another car, just prior to the collision, which was running about thirty-five miles per hour; that there were two men in the truck; and that the truck had on it the name "Rieth Brós." or "Rieth Bros. Trucking Service."

Plaintiff assigns error in instructions given at defendants' request. Defendants, however, contend that their demurrers to the evidence at the close of the case should have been sustained (separate demurrers were offered for each of the three defendants) because there was no evidence that the driver of the truck was acting within the scope of his employment at the time of the accident or was even the employee of any defendant except Edward H. Rieth. Of course error in instructions would be immaterial if plaintiff was not entitled to go to the jury. [Bello v. Stuever (Mo.), 44 S. W. (2d) 619, and cases cited.] Evidence on these issues showed that the truck did not stop after the collision, but that the license number was given to the police, and that about two hours later that night they arrested Hutchins, a truck driver who brought the truck involved in the collision to his home. The police first came to the Rieth home to find the truck. Defendant Fred M. Rieth, who was the father of the other two defendants, went with one of his sons (defendants say Albert H. Rieth) to the police station the next morning to get Hutchins released. Edward was twenty-four and Albert was twenty-two; they both lived at their father's home. Edward said he and his brother had no property and that they relied on their father

"to take care of any trouble of that kind." Hutchins, when arrested, told the police that he had not had a collision with the truck but could not explain the damage to its left side. The next morning Hutchins "was very reticent about giving any information," but when Mr. Rieth was called to the police station at his request and "after Mr. Rieth talked around several times he admitted driving the truck." Hutchins testified that he was the driver and said that he left the scene of the accident,. and denied the collision, in order to save his job.

Plaintiff testified that Fred M. Rieth came to his home the morning after the collision, accompanied by one of his sons (he could not say which one), Hutchins, and police officers; that Fred M. Rieth there said that "he and his two sons owned the Rieth Trucking Service, and they came up to ask me not to prosecute;" that "he said these two men were driving, his son and another fellow were on the truck . . . they had insurance and it would be up to the insurance company to pay me for my damage;" that "he said they had been on a long trip and was tired, fell asleep at the wheel;" and that "he said his son was driving it . . . and asked me not to prosecute." Plaintiff offered the deposition of defendant Albert Rieth in which he stated that he and his brother Edward were partners in the trucking business; that the partnership had existed "since January, 1931;" and that Hutchins was employed by the partnership until "about three or four weeks after the accident." Edward Rieth also testified in a deposition that he was "part owner of the Rieth Brothers Trucking Service;" and that the partnership with his brother had existed "nearly three years."

It was admitted that the insurance policy on the Chevrolet truck involved in the collision was in Fred M. Rieth's name. Mr. Rieth said that he ordered the policy but did not instruct the agent to issue it in his name and did not know he had done so until after the accident. Fred M. Rieth further testified that he was traffic manager for a manufacturing company; that he had an opportunity to get his boys the hauling business at the place where he worked; that he "advanced Edward sufficient money to buy this Chevrolet truck;" that "the two boys ran this business and the proceeds or all the profits that were derived from this trucking business were to be divided among the two;" and that he was to be repaid later for the amount he advanced. He also stated: "That continued until about November, 1932, then there was discord between the two boys about the amount of work one was doing, and the elder one Edward decided to get into the long distance hauling. . . . Albert took full charge of the city business. . . . The profits of the city hauling, . . . Albert kept those to pay his expenses . . . and Edward kept the entire profits from the long distance." He said that

he "never received any profits or earnings either from the original partnership business or the boys' later business individually operated;" that Edward employed Hutchins and paid his salary; and that, although the license to the Chevrolet truck was in Edward's name, Albert was using it in the city business. He denied telling plaintiff that he was in the trucking business with his sons or that either of them was on the truck at the time of the collision. Defendants' evidence showed that four trucks were operated carrying the name Rieth Brothers; but they, the boys, said that this was kept on all of them "to add prestige as to the number of trucks;" and also that "the reason for running under Rieth Brothers was credit; we had our credit O.K. under Rieth Brothers."

Defendants' version of what happened on the evening of the collision is summarized by them in their brief, as follows:

"On the day of the accident defendant Edward Rieth and Hutchins returned in the afternoon from a trip which had extended over three weeks time, coming in from Akron, Ohio. (They said that on this trip they were not driving the truck involved in the collision.) It was customary for either Edward or Albert Rieth to drive the witness Hutchins to his home, as, after such a long trip, he would arrive with dirty clothes. On this afternoon Albert Rieth drove up to his home in the Chevrolet truck afterward involved in the accident. Desiring to use the family pleasure car for his own purposes that evening, and having an engagement with his lady friend, he loaned the Chevrolet truck to Hutchins with instructions to take the truck to Hutchins' home, park it on a lot nearby, and bring it back early in the morning. [The truck was there and *it would have to be moved up to the garage anyway,* so to save my brother a trip bringing it to the garage he let him bring it to that lot and park it there and bring it back in the morning (Edward Rieth) : *We didn't have no garage at that time,* had one just for one truck, *I told him to put it up there and report for work at seven the next morning.* (Albert Rieth).] Hutchins departed with the truck about 6 in the evening to take it home. Albert Rieth departed about an hour later in the family automobile. Edward Rieth, tired from his long trip, retired early and remained at home all night. Instead of taking the truck home, as he was permitted and directed to do, Hutchins used the truck as a means of conveyance for himself, and his friend, Cecil Potts, traveling between their respective homes and the home of his aunt, Elsie Farley. About 11 o'clock that night, deciding to take his friend, Cecil Potts, home, these two embarked in the truck in front of Mrs. Farley's home, and while on Grand Avenue, about fifteen blocks north of the point where Hutchins would have turned off had he been on his way to his own home, he met with this accident."

Defendants rely on Ross v. St. Louis Dairy Co., 339 Mo. 982, 98 S. W. (2d) 717, and State ex rel. Kurz v. Bland, 333 Mo. 941, 64 S. W. (2d) 638. The situation is not the same here. In the Kurz case, the question was whether mere proof of ownership of an automobile made a jury case. In the Ross case neither ownership of the automobile nor employment of the driver was conceded. Here the ownership of the car and the employment of the driver by at least one of the defendants was conceded. The principal question, as to the liability of the other two, on the demurrer is: Was there a partnership firm of Rieth Brothers and who were the partners? If there was substantial evidence that all defendants were partners, then the evidence is sufficient to make a jury case of partnership liability based on partnership ownership of the truck and partnership employment of Hutchins, because the jury would be justified in finding that Hutchins took the truck for the convenience and purposes of the partnership as well as his own. [Byrnes v. Poplar Bluff Printing Co. (Mo.), 74 S. W. (2d) 20, and cases cited.] Whether or not he was using it for a different purpose at the time of the collision would be for the jury, if he started out with it for a partnership purpose. We hold that the facts and circumstances of his service on that date make this a jury issue; and that defendants' explanation was likewise for the jury. [As to partnership tort liability see Burdick on Partnership (2 Ed.) 210; 20 R. C. L. 914, sec. 126; 47 C. J. 884, sec. 364; 55 A. L. R. 1225 note; Caswell v. Maplewood Garage (N. H.), 73 A. L. R. 433; Adair v. Kansas City Term. Railroad Co., 282 Mo. 133, 220 S. W. 920; Mehlstaub v. Michael, 221 Mo. App. 807, 287 S. W. 1079.]

We also hold that plaintiff's testimony as to the declarations of Fred M. Rieth was sufficient to make a jury issue as to his interest in the business when considered together with other circumstances shown, namely: That the boys had no property; that they lived with him; that he financed the purchase of trucks; that their credit was good under the name of Rieth Brothers; that a substantial portion of the business came from the company where he was traffic manager; that the opportunity to obtain this business furnished the occasion for commencing the partnership; that he arranged for the liability insurance; and that the insurance policy was in his name. [See 22 C. J. 402, secs. 479-481, and cases cited; Cape County Savings Bank v. Wilson, 225 Mo. App. 14, 34 S. W. (2d) 981.] Even the stated division of business duties and profits between the brothers does not conclusively show a dissolution of the partnership. [See, also, Sec. 965, R. S. 1929.] The court correctly overruled the separate demurrers to the evidence, and it was proper to submit the question of their liability for the collision to be determined upon the issue of whether or not the truck was at the time

being operated for the purposes of the partnership. We do not, however, rule on the correctness of plaintiff's instruction authorizing a verdict. [See Annin v. Jackson, 340 Mo. 331, 100 S. W. (2d) 872.]

Plaintiff assigns error in Instruction No. 12 given at defendants' request, which was as follows:

"The Court instructs the jury that, even if you find and believe, from the evidence, that the defendant was negligent in the manner specified, still plaintiff cannot recover if he was negligent, and such negligence contributed to his own injury, if any. There is a difference between a plaintiff's and a defendant's negligence in relation to an injury. It is this: Defendant's negligence, if any, must be the sole proximate cause of the injury, whereas plaintiff's negligence, if any, need not be the proximate cause of the injury, for its future recovery if it but contributes directly, in any manner, to the injury. If plaintiff and defendant both were negligent and such negligence concurred in the injuries complained of, then plaintiff has no case, and your verdict shall be for the defendant."

Since this case was not submitted under the humanitarian rule, defendant was entitled to a contributory negligence instruction. The first sentence of this instruction would be correct as far as it goes if it had ended "such negligence *directly* contributed to *cause* his own injury." But to be a proper contributory negligence instruction, it should then submit facts pleaded, as constituting plaintiff's negligence, which there was substantial evidence to prove. [Clason v. Lenz, 332 Mo. 1113, 61 S. W. (2d) 727; Schide v. Gottschick, 329 Mo. 64, 43 S. W. (2d) 777; Hanke v. City of St. Louis (Mo.), 272 S. W. 933.] These facts alleged in defendants' answer were "that plaintiff operated his said automobile at said time and place at a high, dangerous and excessive rate of speed, and plaintiff failed to keep his automobile as close to the right-hand side of said Grand Boulevard, as was practicable." There was evidence that plaintiff drove around two other automobiles which had stopped for a traffic light, went into the street car tracks in the middle of the street to do so, and sideswiped the truck which was also in the middle of the street. Defendants' instruction should have required a finding that plaintiff did these acts pleaded; that they were negligently done; and that they directly contributed to cause his injury. Nevertheless, since all instructions must be read together as one charge, the failure to do so might be harmless if other instructions clearly required a specific finding on such facts. [Dorman v. East St. Louis Railroad Co., 335 Mo. 1082, 75 S. W. (2d) 854; Arnold v. May Dept. Stores Co., 337 Mo. 727, 85 S. W. (2d) 748; Carr v. City of St. Joseph (Mo.), 225 S. W. 922.] Plaintiff's instruction authorizing a verdict adopted the facts pleaded by defendants as constituting contributory

negligence and required the jury to find "that plaintiff was not operating said coupe at said time at a high or dangerous or excessive rate of speed and that he did not negligently fail to keep said coupe as close to the right-hand side of Grand Boulevard as was practicable," before they could find for plaintiff. If defendants' Instruction No. 12 had been a correct general instruction, we think the fact issues on contributory negligence would have been made clear by plaintiff's instruction and the failure of defendant's instruction, to require a finding of these facts which were pleaded as constituting the contributory negligence relied upon by defendant as a defense, would have been cured.

However, the second and third sentences of this instruction made it confusing, misleading and erroneous. It is difficult to understand what is meant by these two sentences explaining the "difference between a plaintiff's and a defendant's negligence in relation to an injury," but they certainly do not correctly state the law and they give the jury a standard which is completely wrong. It is not the law that a "defendant's negligence must be *the sole proximate cause* of the injury" in order for him to be liable therefor. A defendant is liable for an injury if he is guilty of negligence which is a *contributing cause,* but not *the sole cause thereof,* if it combines with other causes then contributory negligence of the plaintiff to produce it. Otherwise stated, a defendant is liable if his negligence is a *proximate cause* of an injury even though it is not *the sole proximate cause* thereof. [Cain v. Humes-Deal Co., 329 Mo. 1107, 49 S. W. (2d) 90, and cases cited.] The only exception to this is where another proximate cause is contributory negligence of the plaintiff. As this instruction is worded, the impression is conveyed that only a slight showing of the negligence is required to bar a plaintiff's recovery, but that a defendant must not be held liable except for negligence so gross and culpable that nothing else could enter into the cause of the casualty.

The jury would be justified, from what this instruction states, in believing that even if the defendant was grossly negligent (although plaintiff was not negligent in any manner sufficient to be a direct efficient producing cause), still defendant should not be held liable unless they believed that defendants' negligence was "*the sole proximate cause* of the injury." This erroneous idea is carried out by the implications, that only the slightest remote carelessness of plaintiff would prevent recovery, in the statements that "plaintiff's negligence (to bar his recovery) need not be the proximate cause of the injury" and "if it *but contributes* directly, *in any manner,* to the injury" (plaintiff could not recover); and this is also further emphasized in the final sentence of the instruction to the effect that "plaintiff has no case" if both were negligent, without any limita-

tion (except that "such negligence concurred"), and without definition of terms. [Cento v. Security Bldg. Co. (Mo.), 99 S. W. (2d) 1, and cases cited.] This instruction well illustrates the confusion that often arises from attempting to instruct the jury on abstract principles of law only, instead of informing them what the fact issues are before them for decision by telling them what *facts* they must believe in order to return the verdict sought by the party requesting the instruction. The jury's function is to decide fact issues, and even a correct abstract statement of legal principles may be more confusing than enlightening to them (especially if stated in a partisan manner), because it is not to be expected that a jury of laymen will always understand technical legal terms, such as "sole proximate cause" for example. [See Peppers v. St. L. - S. F. Railroad Co., 316 Mo. 1104, 295 S. W. 757; Boland v. St. L. - S. F. Railroad Co. (Mo.), 284 S. W. 141; Millhouser v. Kansas City Public Service Co., 331 Mo. 933, 55 S. W. (2d) 673.] Part of this instruction is not even a correct abstract statement. We hold it was prejudicial error.

■ Plaintiff also assigns error in instructions 6, 7, 8, 9, 10 and 11, given at defendants' request, because after hypothesizing facts they close with the words "then your verdict *must* be for defendants." This ending has been criticized as "objectionable" (Privitt v. Jewett (Mo. App.), 225 S. W. 127; Klaber v. C., R. I. & P. Railroad Co., 225 Mo. App. 940, 33 S. W. (2d) 149), but it has also been held not to be error. [Pabst v. Armbruster (Mo. App.); 91 S. W. (2d) 652.] We approve the opinion of the St. Louis Court of Appeals in the Pabst case, because it is the duty of the jury to return a verdict in favor of the party for whom they find all essential fact issues. Although they are free to decide which party's evidence is worthy of belief on any issue, they have no right to act arbitrarily and reach a verdict regardless of what they find the facts to be. While "should" is perhaps a better word to use than "must," it does not seem reasonable that any person qualified to be a juror would be confused or misled by an instruction which correctly required a favorable finding on all essential facts, merely because of such an ending.

■ Plaintiff further assigns error in instructions 6, 7 and 8 because they assumed the fact that Hutchins was driving the truck. These instructions separately authorized a verdict for each defendant unless the jury found that "Hutchins *was operating said truck* and at the time of the collision was carrying out and engaged in an act as the agent (of such defendant) for the particular purpose on which said . . . Hutchins was engaged." Defendants say that it was proper to assume that Hutchins was driving the truck because that was not a controverted fact; that there was no evidence that

anyone else was driving it; and that at the trial plaintiff had abandoned any such theory. We do not think plaintiff abandoned this theory because we note the following statement made during the trial as a part of an objection by counsel for defendants Edward and Albert Rieth, to-wit: "There were two on the truck at the time, but nobody has been identified who was on the truck. The theory of Mr. Pirkey is that one of the boys was on the truck and he is attempting to do it by having certain statements of the father made, presumably made to this witness and at his home the next morning." However, plaintiff had the burden of proof on this issue and produced no substantial evidence tending to show that Edward Rieth was driving the truck. While it did appear from defendants' evidence that Hutchins and Edward Rieth returned from a three weeks trip on the evening of the collision and that there were two men in the truck at that time, plaintiff had no substantial evidence to identify either the men, the truck, or the trip with the occasion of the accident.

Defendants' evidence did not help plaintiff prove his theory. The declarations of Fred M. Rieth were admissible against himself, and the son who was with him, insofar as they were material on the issue of their membership in the partnership and thus their liability for partnership torts. They were not competent evidence of the fact that Edward Rieth was driving the truck. [Mansfield v. Howell, 218 Mo. App. 557, 279 S. W. (2d) 1058; Shelton v. Wolf Cheese Co., 338 Mo. 1129, 93 S. W. (2d) 947.] These declarations were not part of the *res gestae*, were not made in the presence of the partner to whom they referred, were not made concerning any act of the declarant or the alleged partner who heard them, and were shown to be based only on hearsay instead of any personal knowledge of the declarant. [Shelton v. Wolf Cheese Co., supra; 1 R. C. L. 514, sec. 54; 22 C. J. 235, sec. 216; 10 R. C. L. 990, sec. 174; 73 A. L. R. 447 note.] In Adair v. Kansas City Terminal Railroad Co., 282 Mo. 133, 220 S. W. 920, admissions of a partner in charge of partnership work were admitted against the partnership to show his knowledge that improper materials were used (nails of insufficient size), but these admissions were apparently made immediately after the plaintiff's injury and anyhow were made concerning a matter in which the declarant was engaged and about which he had personal knowledge. There was no contention in that case that the proof failed to show small nails were used, and the partner making admissions about them was shown to have seen them himself. Defendants would have been entitled to an instruction limiting this evidence by stating the purpose for which it was received. We hold that there was no issue made for the jury as to anyone else driving the truck at the time of the collision and that it was not error to

assume in defendants' instructions that Hutchins was driving instead of requiring the jury to find that to be a fact. But, since there was substantial evidence that he was a partnership employee, these instructions (also 9, 10 and 11) should not have ignored the partnership issue on which there was substantial evidence, by separately authorizing a verdict for each defendant merely upon a finding that Hutchins was not at the time of the collision engaged in an act as the individual employee of each defendant. Under the evidence, the liability of Fred M. and Albert Rieth for his acts would be based on his employment by the partnership. If defendants desired instructions submitting a dissolution of the partnership, or authorizing a verdict for any defendant the jury found not to be a member of a partnership, these would have been proper.

Plaintiff's other assignments of error relate to examination of witnesses during the trial which do not require discussion here. They are not likely to arise in the same way on retrial.

The judgment is reversed and the cause remanded. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.