ELLEV SWAIN, Appellant, v. HERMAN ANDERS, and CLAUDE NEWINGHAM.—163 S. W. (2d) 1045.

Division One, July 1, 1942.

Rehearing Denied, July 28, 1942.

*Claud F. Cooper* and *T. J. Crowder* for appellant.

*R. F. Baynes* and *Harry H. Bock* for respondents.

966

DALTON, C.—This is an action for $10,000 damages for the death of plaintiff's husband, who was killed in a collision between the automobile he was operating and a truck traveling in the opposite direction on Highway 62 in New Madrid County. The jury returned a verdict for defendants, and plaintiff has appealed.

The petition charged defendants (the operator of the truck and his employer) with negligence (1) in failing to keep a look-out ahead, and laterally, for the presence and approach of other vehicles on the highway; (2) in failing to drive as close to the right hand side of the highway as practicable under the circumstances; (3) in operating the truck at an excessive and dangerous rate of speed, endangering the lives and safety of others; and (4) negligence under the humanitarian doctrine in failing to stop, slacken speed, swerve the truck or warn deceased. The cause, however, was submitted to the jury on the 1st and 3rd assignments of negligence and in the conjunctive, to-wit, negligence in failure "to keep a careful watch and lookout ahead and laterally for the presence and approach of other automobiles and persons" *and* negligence in "driving and operating the said motor truck at a high, unreasonable and dangerous rate of speed under the circumstances then and there existing."

The answer, after a general denial, charged that plaintiff's husband was guilty of contributory negligence (1) in failing to keep a look-out ahead and laterally for the presence and approach of motor vehicles;

(2) in failing to drive as near the right hand side of the highway as practicable; (3) in carrying on a conversation with a person in the automobile with him; (4) in driving his automobile at a high, excessive and dangerous rate of speed and failing to have the same under control, so he could stop upon the approach of danger, and (5) in turning to the left into the path of defendants' approaching motor vehicle.

This is the second appeal of the case, and, according to appellant, the cause has been tried three times to a jury, with two verdicts for plaintiff, when the cause was submitted on humanitarian negligence, and one (the last) for defendant when submitted on primary negligence. Motions for new trial were sustained after the first two verdicts for plaintiff. When the trial court sustained the motion for a new trial after the second verdict, plaintiff appealed to the Springfield Court of Appeals. That court affirmed and remanded the cause, holding the evidence insufficient to make a submissible case under the humanitarian doctrine, but sufficient to make a case on primary negligence. [Swain v. Anders (Mo. App.), 140 S. W. (2d) 730, 735, 737.]

On this appeal appellant (plaintiff) assigns error on the instructions on contributory negligence given at the request of respondents (defendants), while respondents contend the error, if any, were harmless, because plaintiff's evidence was not sufficient to make a submissible case and the trial court should have sustained their demurrer to the evidence at the close of the whole case. In what particulars the evidence is deficient is not pointed out, except as may be inferred from statements that "the testimony of the witness Hadoway is so contradicting and conflicting, no case could be made, or based on his testimony;" that "testimony demonstrated to be false by all the facts and common knowledge of scientific facts" is valueless; and that "mere conjecture or suspicion are insufficient to make out a case for plaintiff." In reply, appellant contends that, since the evidence on the last trial was substantially the same as on the former trial, the holding of the Court of Appeals that "there was ample evidence . . . to make a submissible case on primary negligence" is controlling.

 Ordinarily, matters decided on one appeal, where the issues and evidence are the same, will be considered settled law on a second appeal in the same case, except where a mistake of fact has been made or where the decision did not do justice to the parties. [Yakubinis v. M. K. & T. R. Co., 345 Mo. 943, 137 S. W. (2d) 504.] However, it does not appear from the opinion of the Springfield Court of Appeals that the issue of the sufficiency of the evidence to make a case for the jury on the charges of primary negligence, upon which the cause was last submitted, was before that court on the prior record. [Swain v. Anders, supra; Guthrie v. City of St. Charles, 347 Mo. 1175,

152 S. W. (2d) 91, 95.] According to the record on that appeal, defendants had demurred to the evidence at the close of the whole case and, after their demurrer had been overruled, the cause was submitted to the jury "solely under the humanitarian doctrine." Plaintiff had appealed from the order granting defendants a new trial on the ground that the court erred in overruling defendants' demurrer to the evidence. The issue presented on that appeal was the sufficiency of the evidence to make a case for the jury under the humanitarian doctrine, the theory upon which it had been tried and submitted by the plaintiff. We must, therefore, on his appeal determine the sufficiency of the evidence to make a submissible case upon the theory upon which the cause was last submitted to the jury.

Stated most favorably to plaintiff, the evidence tended to show that on November 28, 1938, about 6 P. M. deceased, accompanied by one Hadoway, was driving a Chevrolet coupe west on Highway 62 in New Madrid County, about 3 miles east of Risco. Defendant Claude Newingham, an employee of defendant Herman Anders, was driving a Ford V 8 truck east on said highway. Newingham was accompanied by one David Farris. It was just getting dark and deceased had just turned on his lights. The highway was a hard graveled road 35 feet wide, with shoulders three feet wide on either side.

At the place of the collision, a truck without lights was parked on the north side of the highway, headed west. Newingham and Farris were talking and Newingham paid no particular attention to the approach of deceased's automobile, although he saw it approaching behind the parked truck. Their truck, operated by Newingham, was traveling east at 60 or 65 miles per hour and had its lights on. It did not slacken its speed and its operator did not sound the horn at any time prior to the collision. Deceased, as he approached the parked truck from the rear, was driving about 45 miles per hour on his right hand side of the highway, about 5 feet from the north edge of the road. Hadoway, riding with the deceased, first saw the parked truck "around a quarter of a mile" away and, when in 300 or 400 feet of it, he advised deceased of its presence. Deceased began to slow down and, when in 15 or 20 feet of the parked truck, he began pulling around to the left, to go around it, but he did not get over the center of the road, and was then driving 25 miles per hour. Hadoway, seated on the right side of the coupe, did not see the approaching truck, until deceased "pulled out even with the parked truck." The approaching truck was then 300 or 400 feet west of the parked truck. Deceased's car passed about 2 feet from the left hand side of the parked truck. When deceased's car was 15 or 20 feet west of the parked truck, the approaching truck struck deceased's automobile on the left side near the door hinge, a glancing lick. The side of deceased's automobile was then 15 feet from the north side of the gravel road and it was headed "kinda north and west," but no part

of the automobile was south of the center of the highway. The collision turned deceased's automobile around so that it was headed south ▮▮▮ and east. Deceased was instantly killed and his body lay on the running board of the automobile. The parked truck then drove partly off the road and on the rim of the ditch, to get around deceased's automobile, and departed before its owner or operator was identified. Deceased's automobile came to a stop 15 feet west of the parked truck and on the north side of the road. Defendants' truck stopped 15 feet further east. Defendants' truck "was right about center of the road," when the collision occurred. Deceased was not talking to his companion at the time of the collision. Deceased's car traveled at least 50 feet at 20 or 25 miles per hour, after Hadoway saw the approaching truck, prior to the collision.

Considered most favorably to defendants the evidence tended to show that the road was 25 or 30 feet wide, with narrow shoulders; that there was some loose gravel on the road; that the parked truck was on the graveled portion of the road 3 feet from the north side of the gravel; that deceased, driving west on the north side of the road, approached the parked truck from the east at 40 or 45 miles per hour; that defendants' truck was traveling east at 35 or 40 miles an hour on the south or right hand side of the road, 3 feet from the edge; that defendant Newingham did not know how fast deceased's automobile was traveling; that, when defendants' truck was 40 feet west of the parked truck, deceased, traveling in the opposite direction, swerved out to his left, around the parked truck, clear across the road to the south side, and then whipped back, skidded toward the approaching truck and was hit a glancing blow by said truck; that deceased's automobile was 10 to 15 feet from the parked truck when it swerved out; that defendant Newingham had no warning that deceased's automobile was going to come to the south side of the road or attempt to pass around the parked truck; that, when deceased turned to the left, the defendants' approaching truck was so close that deceased's automobile was hit before it could get back to the north side; that when Newingham, the driver of defendants' truck, saw deceased's automobile come from behind the parked truck, he applied the brakes, slackened speed and jerked to the right, toward the ditch on the south side of the road; that defendants' truck stopped partly in the ditch at the south side of the road; and that skid marks in the gravel showed deceased's car had passed over the center of the road before the collision. The collision swung deceased's automobile around and left it headed southeast in the center of the road.

▮ We are first confronted with respondents' motion to dismiss the appeal for appellant's failure to comply with rules 11, 13, 15 and 16 of this court. Respondents have filed a large "additional and supplemental abstract of the record" and insist that appellant failed to bring up so much of the record "as is necessary to a complete

970

understanding of all the questions presented for decision.'' Respondents say that only part of the evidence was narrated, to-wit, that most favorable to appellant; and that ''a great portion of the evidence shown by the bill of exceptions has been intentionally omitted from the abstract of the record.'' It is apparent from the supplemental abstract that much detailed evidence has been omitted, particularly evidence affecting the credibility of plaintiff's chief witness and in impeachment of him. This witness was cross-examined at length with reference to prior oral and written statements and prior deposition testimony which was to some extent at variance with and in some instances in conflict with some of his direct testimony in the last trial. There were also matters of impeachment, as for example that he had said he lied at the prior trial. Much of this cross-examination and much of the impeaching evidence was omitted from appellant's abstract of the record. However, if enough of the evidence was set out to show that defendant's demurrer to the evidence at the close of the whole case was properly overruled, and if nothing was omitted which could reasonably be said to be any reasonable basis for this court to hold that no case was made for a jury (regardless of the evidence set out), and if enough of the evidence was shown for the purpose of determining the correctness of the instructions on the grounds of complaint raised against them, then the abstract was sufficient. This is not a case where a defendant, as appellant, has omitted portions of the evidence and then contends that the plaintiff did not make a case for the jury.

The credibility of Hadoway as a witness and the variations between his prior oral and written statements and deposition testimony, as compared with his present testimony, and all matters of impeachment were matters for a jury to pass upon. The conflicts in his testimony at the trial concerning speeds and distances, as for example his estimates indicating that defendants' truck went 300 to 400 feet at 60 to 65 miles per hour while deceased went 50 feet at 20 to 25 miles per hour, and the matters of impeachment and prior conflicting statements, et cetera, were not sufficient to destroy the probative value of his testimony as a matter of law. The credibility of the witness and the weight and value to be given to his testimony was a jury question. It was unnecessary to bring up all of such impeaching evidence in view of the issues involved on this appeal. In any case, it is clear from a reading of the whole evidence, which is now before us, that nothing was omitted from appellant's abstract which could have been of aid to respondents in their contention that plaintiff (appellant) was not prejudiced even if the instructions requested by defendants were erroneous.

We hold that nothing was omitted from the original abstract, as shown by the supplemental abstract, that would be any reasonable basis for this court to hold, as a matter of law, that Hadoway's testi-

mony was inherently worthless, or that it was so conflicting and contradictory as not to constitute substantial evidence and carry plaintiff's case to the jury, nor was anything omitted from the abstract that would have shown that plaintiff did not make a submissible case for the jury. Therefore, defendants were not prejudiced by plaintiff's failure to bring up a more complete abstract. The motion to dismiss is overruled. We further hold that, considering all the evidence in a light most favorable to plaintiff, considering plaintiff's evidence as true and giving plaintiff the benefit of all favorable inferences that can reasonably be drawn from the whole evidence, plaintiff made a case for the jury upon one or more of the grounds of negligence upon which the cause was submitted and the court did not err in overruling defendant's demurrer to the evidence tendered at the close of the whole case. We must, therefore, overrule respondents' contention that appellant was not prejudiced even if erroneous instructions were given to the jury at defendants' request.

Appellant assigns error on the giving of instructions 4, 5, 7, and 9, at the request of defendants. It will be necessary to consider the instructions together. Instruction 4 told the jury that if deceased and Newingham "were both negligent" and that deceased died as the result "of the concurring negligence, if any," of both, and if deceased's "negligence, if any, contributed to or combined with any negligence of" Newingham to cause deceased's death, the plaintiff could not recover.

Appellant says that instruction 4 fails to hypothesize any act of negligence which allegedly caused or contributed to deceased's injuries and death; and that it did not limit such negligence to any acts of contributory negligence pleaded or proven.

Instruction 5 told the jury that if deceased "failed to exercise for his own protection from danger that degree of care usually exercised by an ordinarily prudent person of his age, intelligence and discretion, and by such failure to so exercise such degree of care . . . helped to cause and bring about the collision . . . he would be guilty of contributory negligence" and their verdict should be for defendants.

Appellant says that instruction 5 is subject to the same defects as instruction 4; that it hypothesized no facts and required no finding of failure to exercise care in any particular respect; and that it did not define what was meant by ordinary care.

Instruction 7 contains these words: "Before your verdict can be in favor of plaintiff, you must find . . . that . . . Newingham, was negligent in one or more of the particulars in the other instructions given you . . . and that the said deceased Charles Swain himself was not guilty of any negligence contributing to cause his said injuries or combined with any negligence on the part of . . . Newingham, if you so find, as set forth in other instructions given you."

Appellant says that this instruction was subject to the same defects as instruction 4; and that it further placed the burden on plaintiff to prove deceased was *not* guilty of contributory negligence.

We think that instructions 4, 5 and 7 gave the jury a roving commission to determine whether deceased was guilty of negligence in any respect whatsoever contributing to his death; and that authorized them to bring in a verdict for defendants if they found that any such negligence ''contributed to or combined with any negligence of'' Newingham to cause deceased's injury or death. [Schide v. Gottschick, 329 Mo. 64, 43 S. W. (2d) 777, 779(3); King v. Rieth, 341 Mo. 467, 108 S. W. (2d) 1, 5; Pearrow v. Thompson, 343 Mo. 490, 121 S. W. (2d) 811, 815; See also cases cited in Watts v. Moussette, ▮▮▮ 337 Mo. 533, 85 S. W. (2d) 487, 491.] It is unnecessary to consider the other alleged defects.

▮▮ Respondents, in effect, concede the generalness of these instructions, but say that any error was cured by instruction 9.

Instruction 9 told the jury that if ''the deceased Charles Swain turned, pulled, swerved, or drove his car from the north side of the highway to the south into the path of the truck driven by the defendant, Claude Newingham, although you may find and believe from the evidence that the deceased, Charles Swain, came upon a vehicle parked on the north side of said highway without lights, and that the said Charles Swain so turned, pulled, swerved, or drove his said car from the north side of the highway to his left, or the south so as to prevent hitting or running into the said parked vehicle, if you so find, and that the said turning, pulling, swerving, or driving of the said Charles Swain's car from the said north side of the highway to his left or the south into the path of the vehicle driven by defendant, Claude Newingham, if you so find, directly contributed to cause the collision, and that the collision would not have occurred if the said Charles Swain had not so turned, pulled, swerved, or driven his car from the north into the path of the vehicle driven by the said Claude Newingham, if you so find the facts to be, then your verdict must be for the defendants.''

Appellant says ''this instruction hypothesizes certain facts and assumes such acts to be negligent and fails to require the jury to find from the evidence whether or not such acts, under the circumstances constitute negligence on the part of the said Charles Swain.''

Respondents' position is that instruction 9 is correct; that it requires the finding of specific facts required to be found as a prerequisite to a verdict for defendants; that the facts hypothesized constituted negligence per se; and that it was immaterial that the instruction failed to require the jury to find that the doing of the acts constituted negligence. Respondents contend that, when instruction 9 is read with the other instructions (as one charge to the jury), it remedied any defects in the other instructions complained of. Respondents

rely upon King v. Rieth, 341 Mo. 467, 108 S. W. (2d) 1, 5, and the cases therein cited. In the King case defendant's contributory negligence instruction was general and hypothesized no facts as constituting plaintiff's negligence, but plaintiff's instruction covered the field and required a finding that plaintiff was not negligent in the specific manner pleaded by defendant and shown by defendant's evidence. This court said if defendant's general contributory negligence instruction had otherwise been correct that plaintiff's instruction would have cured this defect of generalness. [See also Nephler v. Woodward, 200 Mo. 179, 188, 98 S. W. 488.]

None of these cases can aid respondents, because in their answer in this case respondents charged deceased with negligence in five particulars which allegedly directly contributed to his injury and death. Several of these assignments were supported by evidence and only one of them was attempted to be submitted specifically by instruction 9, the others were submitted generally. In view of the three general contributory negligence instructions and the one specific one, it could not be contended that the other assignments of contributory negligence, which were pleaded and supported by evidence but not specifically submitted, were abandoned. Respondents contend that, when instructions 4, 5 and 7 are read with instruction 9, "there is a specific act of negligence instructed upon." We cannot agree. There was no waiver or abandonment of the other assignments of contributory negligence. The three instructions on general contributory negligence could reasonably be construed as evidencing an intention to instruct on the other assignments. Neither was instruction 9 a correct instruction. The instruction does not hypothesize facts constituting the express violation of a statute. The facts hypothesized constitute a bar to plaintiff's recovery, only if the jury should find they were *negligently* done by deceased and *directly* contributed to his injury and death.

"Negligence is ordinarily a question for the jury. It is always so when the evidence on material points is conflicting, or where, the facts being undisputed, different minds might reasonably draw different conclusions from them." [Frese v. Wells (Mo. Sup.), 40 S. W. (2d) 652, 653; Rouchene v. Gamble Construction Co., 338 Mo. 123, 89 S. W. (2d) 58, 61.] "Negligence does not become a question of law alone, unless the acts constituting it are of such a character that all reasonable men should concur in pronouncing them so." [Wilson v. Wells, 321 Mo. 929, 13 S. W. (2d) 541, 544.] Accordingly, an instruction should ordinarily submit to the jury the pleaded acts, as shown by the evidence, for the jury to determine whether or not the commission of such acts was negligence. [See, Lithegner v. City of St. Louis (Mo. App.), 125 S. W. (2d) 925, 933; Ducoulombier v. Baldwin (Mo. App.), 101 S. W. (2d) 96, 102; Darks v. Scudder-Gale Grocery Co., 146 Mo. App. 246, 261, 130 S. W. 430, 434.]

Where an instruction requires the finding of facts which constitute the violation of a statute and the mere doing of the acts required to be found by the jury is negligence per se, no finding by the jury that the acts were negligently done, is required. [Benzel v. Anishanzlin (Mo. App.), 297 S. W. 180, 182 (3-4); Benoist v. Driveaway Company (Mo. App.), 122 S. W. (2d) 86, 90; Klohr v. Edwards (Mo. App.), 94 S. W. (2d) 99, 103, 104.

Where an instruction requires the jury to find specific facts which necessarily constitute negligence as a matter of law it is immaterial that the instruction does not require the jury to find that such facts, if found, constitute negligence. [McCaffery v. St. L. & M. R. Ry. Co., 192 Mo. 144, 155, 90 S. W. 816; Luckel v. Century Bldg. Co., 177 Mo. 608, 626-632, 76 S. W. 1035; Hall v. Manufacturers' Coal & Coke Co., 260 Mo. 351, 367, 168 S. W. 927; Borowski v. Loose-Wiles Biscuit Co. (Mo. App.), 229 S. W. 424, 426 (3); Dodson v. Gate City Oil Co.. 338 Mo. 183, 88 S. W. (2d) 866; Raymond on Missouri Instructions, Vol. 1, p. 15, Sec. 5.] "However, unless the facts hypothesized as a matter of law, constitute negligence and there is no room for conflicting inferences the jury should be required to determine whether such facts constitute negligence." [Raymond on Instructions, Vol. 1, p. 16, Sec. 5; McCollum v. Winnwood Amusement Co., 332 Mo. 779, 59 S. W. (2d) 693, 697; McCullough v. St. Louis Public Service Co. (Mo. App.), 86 S. W. (2d) 334, 335.]

Instruction 9 does not require a sufficient finding of facts to constitute contributory negligence as a matter of law. No finding as to the location of defendants' truck with reference to the center of the road was required. The words "to the south" are indefinite and uncertain as to distance and as to the center of the road. Whether or not deceased was guilty of contributory negligence depended to some extent upon the speed and distance of the respective vehicles, the width of the road, the location of the parked truck, and other circumstances in evidence,. which could be considered by the jury in the determination of the issue of negligence, that is, whether deceased failed to exercise the proper degree of care under the circumstances. Some of these facts were not included in the facts hypothesized. The jury was not required to make any specific findings as to the speed and distance of the respective vehicles when the deceased turned to the left. We cannot say that the facts required to be found by the jury left no room for conflicting inferences or show deceased was guilty of contributory negligence as a matter of law and that all reasonable men could draw no other inference. [See, McCullough v. St. Louis Public Service Company, supra.] Nor does the instruction submit specific acts of the deceased constituting a violation of a particular statute so as to be negligence per se. We hold that the instruction was erroneous in failing to require a finding by the jury

that the facts hypothesized constituted negligent conduct by the deceased directly contributing to his injury and death.

For the error in giving instructions 4, 5, 7 and 9, at the request of defendants the judgment is reversed and the cause remanded. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.